The **TENNESSEE MANUFACTURED HOUSING ASSOCIATION and Billy Parker, Plaintiffs/Appellants,**

v.

The **METROPOLITAN GOVERNMENT OF NASHVILLE and Davidson County, Defendant/Appellee.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Aug. 24, 1990.

George A. Dean, Parker, Lawrence, Cantrell & Dean, Nashville, for plaintiffs/appellants.

James L. Murphy, III, Metropolitan Legal Dept., Nashville, for defendant/appellee.

## OPINION

KOCH, Judge.

This appeal involves a landowner's efforts to place a double-wide manufactured home on property zoned for single-family residences. After his application for a building permit was denied, the landowner and an advocacy group promoting manufactured housing filed an action in the Chancery Court for Davidson County seeking a declaration that the city's prohibition against locating manufactured housing in residential districts violated state law and was unconstitutional.[1] The trial court held

---

1. The plaintiffs did not pursue their constitutional issue in either the trial court or this court. Therefore, we consider the issue abandoned.

that state law did not protect double-wide manufactured homes from exclusion from residential districts. The landowner and the advocacy group have appealed. We find that the state law protects double-wide manufactured homes. However, we also find that the zoning ordinance does not violate state law because it does not prohibit placing double-wide manufactured homes in residential districts.

## I.

Billy Parker and his wife own a tract of land in Davidson County near Goodlettsville. In 1987, he purchased a manufactured home from Larry Dalton, intending to place it on his property and to use it as his residence. The home, commonly known as a "double-wide" manufactured home, consisted of two sections, each larger than eight feet wide and forty feet long with complete plumbing and electrical systems.

In July, 1987, Mr. Parker applied to the Metropolitan Department of Codes Administration for a building permit. The department considered his manufactured home to be a mobile home for the purposes of the zoning ordinance and declined to issue the permit because his property was located in an R–20 district [2] where mobile homes were not permitted as a matter of right.

Mr. Parker requested the Metropolitan Council to rezone his property to an AR2a district because mobile homes could be located in these districts as a matter of right.[3] The Metropolitan Council turned down Mr. Parker's request even though Mr. Parker had obtained the approval of the planning commission.

Having no alternative, Mr. Parker and his wife placed their manufactured home in a trailer park. There they are required to pay rent on the space where their home is located. Relocating their home would cost between $3,000 and $5,000 because it is no

longer readily transportable. However, the Parkers would move their home to their property if they could because they prefer living on their own property to living in a trailer park.

## II.

■ The parties' dispute centers around their conflicting interpretations of Tenn. Code Ann. § 13–24–201 (1987), a statute enacted in 1980 [4] to prevent local zoning ordinances from excluding certain types of manufactured "residential dwellings" from residential districts. Mr. Parker asserts that his manufactured home was protected by Tenn.Code Ann. § 13–24–201 and could not, therefore, be excluded from an R–20 district. The city, on the other hand, insists that Mr. Parker's manufactured home was not protected by Tenn.Code Ann. § 13–24–201. Accordingly, we must decide whether a double-wide manufactured home is a structure entitled to Tenn.Code Ann. § 13–24–201's protection.

Tenn.Code Ann. § 13–24–201 provides:

Notwithstanding any provision of the law to the contrary, no power or authority granted by this Code to regulate zoning or land use planning shall be used to exclude the placement of a residential dwelling on land designated for residential use solely because the dwelling is partially or completely constructed in a manufacturing facility; provided, however, that the term "residential dwelling" as used in this part shall not apply to factory-manufactured mobile homes constructed as a single self-contained unit and mounted on a single chassis, and as further defined in § 68–36–202(2), (4), and (8), nor shall this chapter have any effect whatsoever upon any zoning or other regulations whether state or local concerning such factory-manufactured mobile homes as herein defined.

2. An R–20 district is a low density residential district requiring residences to be built on lots containing at least 20,000 square feet.

3. AR2a residential districts are intended for agricultural activities but permit very low density residential development generally on unsubdi-

vided tracts of two acres or more. Section 22.10 of the city's zoning ordinance permits the placement of mobile homes in these districts as a matter of right.

4. *See* Act of Mar. 20, 1980, ch. 747, 1980 Tenn. Pub.Acts 783.

■ The sole purpose of construing statutes is to ascertain and to give the fullest possible effect to the General Assembly's intentions. *Westinghouse Elec. Corp. v. King*, 678 S.W.2d 19, 23 (Tenn. 1984), *cert. denied*, 470 U.S. 1075, 105 S.Ct. 1830, 85 L.Ed.2d 131 (1985); *Brooks v. Fisher*, 705 S.W.2d 135, 137 (Tenn.Ct.App. 1985). Courts must take statutes as they find them, *Watts v. Putnam County*, 525 S.W.2d 488, 494 (Tenn.1975), and must construe them as a whole in light of their general purpose. *Oliver v. King*, 612 S.W.2d 152, 153 (Tenn.1981).

■ Courts should also limit their consideration of an unambiguous statute to the words of the statute itself. *Neff v. Cherokee Ins. Co.*, 704 S.W.2d 1, 3 (Tenn. 1986); *Montgomery v. Hoskins*, 222 Tenn. 45, 47, 432 S.W.2d 654, 655 (1968). In doing so, they should presume that the General Assembly chose its words carefully, *Tidwell v. Servomation–Willoughby Co.*, 483 S.W.2d 98, 100 (Tenn.1972), and they should give these words their natural and ordinary meaning. *State v. Williams*, 690 S.W.2d 517, 529 (Tenn.1985); *Mercy v. Olsen*, 672 S.W.2d 196, 198 (Tenn.1984).

Tenn.Code Ann. § 13–24–201 does not afford protection to

> "factory-manufactured mobile homes constructed as a single self-contained unit and mounted on a single chassis, and as further defined in § 68–36–202(2), (4), and (8)." [5]

According to Mr. Parker's interpretation of these words, the exclusion does not apply to his double-wide manufactured home because it is not "constructed as a single self-contained unit and mounted on a single chassis." The city, on the contrary, insists that Mr. Parker's mobile home is excluded because it is a "manufactured home" as defined in Tenn.Code Ann. § 68–36–202(4).

The parties' differing interpretations of this exclusion are based on their differing interpretations of the "and" between "chassis" and "as." Under Mr. Parker's interpretation, it is conjunctive; under the city's, it is disjunctive. Thus, we are called upon to decide whether the General Assembly intended to exclude from Tenn.Code Ann. § 13–24–201's protection mobile homes constructed as a single, self-contained unit and mounted on a single chassis that fit within Tenn.Code Ann. § 68–36–202(4)'s definition of "manufactured home" or whether, in addition to mobile homes constructed as a single, self contained unit, the General Assembly intended to exempt all the structures coming within Tenn.Code Ann. § 68–36–202(4)'s definition of "manufactured home."

■ The rules of grammar and punctuation favor Mr. Parker's interpretation because "and" is a conjunctive article indicating that the portions of the sentence it connects should be construed together. *See* 73 Am.Jur.2d *Statutes* § 241 (1974); 82 C.J.S. *Statutes* § 335 (1953). However, the courts should not base their construction of statutes solely on the technical rules of grammar and punctuation. *Tidwell v. Collins*, 522 S.W.2d 674, 676 (Tenn.1975); *Cavender v. Hewitt*, 145 Tenn, 471, 478, 239 S.W. 767, 769 (1922).

Since the Tennessee Supreme Court has held that the word "and" can be construed as a disjunctive article in order to give effect to the General Assembly's intent, *City of Knoxville v. Gervin*, 169 Tenn. 532, 541, 89 S.W.2d 348, 352 (1936), Tenn.Code Ann. § 13–24–201 provides some support for both Mr. Parker's and the city's interpretations. In this situation, we would be well advised to consult the statute's legislative history to ascertain the General Assembly's intent. *University Computing Co. v. Olsen*, 677 S.W.2d 445, 447 (Tenn. 1984); *Chapman v. Sullivan County*, 608 S.W.2d 580, 582 (Tenn.1980); *City of Oak Ridge v. Roane County*, 563 S.W.2d 895, 899 (Tenn.1978).

---

**5.** Tenn.Code Ann. § 68–36–202 (1987) has been amended several times since Tenn.Code Ann. § 13–24–201's enactment. Accordingly, the reference in Tenn.Code Ann. § 13–24–201 to "§ 68–36–202(2), (4), and (8)" should be to Tenn.Code Ann. § 68–36–202(4), (6), and (7)." These sections contain the definitions of "manufactured home," "motor home," and "recreational vehicle" respectively.

The House of Representatives discussed the language at issue in this case prior to the bill's final passage on March 17, 1980. During the debate, Representative David Copeland attempted to amend the bill to exclude "factory-manufactured mobile homes, all as defined in Chapter 48, Title 53, Tennessee Code Annotated." [6] He explained the purpose of his amendment as follows:

> The bill that we have before us, though, goes further than what's really intended because the law does not adequately distinguish when it talks about pre-fabricated structures between mobile homes and modular homes. The only thing this amendment does is to cite the existing section of the law which defines what a mobile home is, what a recreational vehicle is, and says that those things can't be placed there despite the passage of this Act.

The effect of Representative Copeland's amendment would have been to exclude from the bill's protection all structures defined as a "manufactured home" in Tenn. Code Ann. 53–4822(2).[7]

The bill's sponsor, Representative John Steinhauer, objected to Representative Copeland's amendment, claiming that it would "totally destroy the intent of the legislation." Thereafter, the following discussion ensued between Representatives Steinhauer and Copeland and another member of the House concerning the effect of Representative Copeland's amendment:

> REP. WALLACE: ... When this bill passed through [the] State and Local Government [Committee], and what I think the intent of at least some of us in State and Local Government was, was to prevent the zoning out of modular homes, but we did not intend to allow what we normally think of as mobile homes to be ... located in a residential area. Now if your amendment passes, is it your belief that we will permit modular homes and that a zoning board can't outlaw modular homes but can still prevent mobile homes, as distinguished from modular homes?
>
> You know, if they take two mobile homes and put them side by side and look just like a house, and you can't tell that it's not a house. And my own view is that they ought to be permitted. But a traditional mobile home should not. Will your amendment accomplish this result?
>
> REP. COPELAND: Mr. Wallace, the intent is to do precisely what you have described, and my belief is that is exactly what it does.
>
> REP. WALLACE: Well, then, I'd like to ask the sponsor of the bill to yield and ask him if he agrees with Representative Copeland that this will accomplish the objective of allowing modular homes but not allowing mobile homes.
>
> REP. STEINHAUER: Representative Wallace, I contend that it [the amendment] will do great harm to the bill itself because it will preclude any modular housing from being installed.
>
> \*   \*   \*   \*   \*   \*
>
> REP. WALLACE: I guess I express these concerns to the entire House. But, it's my own view that to allow modular homes—the kind I think that the sponsor of the bill is talking about—which is where you take two manufactured units and put them together on a lot, and they have a roof and look just like a house, and it's my own view that zoning ordinances should not prohibit that kind of dwelling. It's unfair to the manufacturers of them. But that the traditional mobile home that you think of as a mobile home, that the zoning board should have the option to exclude that ... It seems to me this amendment seems to accomplish that objective, and I don't un-

---

6. See 1 House Journal 3143–44 (1980).

7. At the time the General Assembly was considering this bill, Tenn.Code Ann. §§ 53–4821, –35 (Supp.1982) contained the "Uniform Standards Code for Factory–Manufactured Structures and Recreational Vehicles." These standards are now codified at Tenn.Code Ann. §§ 68–36–201, –215 (1987 & Supp.1990). The definition of "manufactured home" in Tenn.Code Ann. § 53–4822(2) is identical to the definition in Tenn.Code Ann. § 68–36–202(4).

derstand the sponsor of the bill's concern about it.

\*　　\*　　\*　　\*　　\*　　\*

REP. STEINHAUER: Representative Wallace, when those two sections you're talking about are transported, many people can determine that that is a mobile home simply because it is transported on wheels when in reality it is not. And that's where the damage can be done ... is the interpretation of what is and what is not a mobile home.

Representative Copeland withdrew his original amendment in light of Representative Steinhauer's objections. Later during the debate, Representative Copeland introduced another amendment containing the language that is now found in Tenn.Code Ann. § 13–24–201.[8] He explained that the amendment referenced the code's definition of mobile home but that he and Representative Steinhauer had "further defined it to be that structure which is built on a single unit and transported on a steel chassis, which is attached to it." He also stated that "[t]his gives us all what we want which is the latitude for modular homes, but continuing ... the prohibition on mobile homes."

Apparently, the legislators' references to "modular homes" prompted the trial court to conclude that they intended to protect only "modular building units" as defined in the Tennessee Modular Building Act, Tenn. Code Ann. §§ 68–36–301, –320 (1987). We do not agree. The Tennessee Modular Building Act was not enacted until five years after the passage of Tenn.Code Ann. § 13–24–201. No statutory definition of "modular home" existed at the time the General Assembly enacted Tenn.Code Ann. § 13–24–201. Our review of the statute's legislative history leads us to conclude that the legislators' references to "modular" housing were references to structures that were manufactured and transported in at least two sections and then joined at the site into a single structure.

The legislative history is harmonious with the rules of grammar and punctuation. Accordingly, we conclude that Tenn. Code Ann. § 13–24–201 protects all manufactured residential dwellings, except for motor homes, recreational vehicles, and "manufactured mobile homes constructed as a single self-contained unit and mounted on a single chassis." However, in order to be entitled to the statute's protection, a manufactured residential dwelling must also have "the same general appearance as required for site-built homes." *See* Tenn. Code Ann. § 13–24–202 (1987).

### III.

■ Our task cannot end with determining that structures of the type the Parkers propose to place on their property are protected by Tenn.Code Ann. § 13–24–201. We must still decide whether the Parkers' double-wide manufactured home is a "mobile home" as the term is defined in the city's zoning ordinance. Even though the parties appear to have assumed that it is, we take up the issue because it is incumbent on us to apply the controlling law whether or not cited or relied upon by either party. *Coffee v. Peterbilt of Nashville, Inc.*, 795 S.W.2d 656, 658–659 (Tenn. 1990);[9] *City of Memphis v. I.B.E.W., Local 1288*, 545 S.W.2d 98, 100 (Tenn.1976). We find that the Parkers' manufactured home is not a "mobile home" for the purposes of city's zoning ordinance.

Section 12.10 of the city's zoning ordinance defines a "mobile home" as

[a] movable or portable structure having no foundation other than wheels, jacks, or skirtings, and so designed or constructed as to permit long-term occupancy for dwelling purposes, and arriving at the site where it is to be occupied as a complete dwelling, including major appliances.

*See also* Section 13.41(a). According to the present zoning administrator, all "manufactured housing has always in the past been construed by both the Board of Zoning Appeals and the Metropolitan Zoning Ad-

8. *See* 1 House Journal 3145 (1980).

9. *Coffee v. Peterbilt of Nashville, Inc.*, 795 S.W.2d 656, 658–659 n. 1 (Tenn.1990).

ministrator (including both my predecessors and myself) as mobile home residential activities pursuant to Section 13.41(a)."

■ Courts should construe municipal ordinances, including zoning ordinances, using the same rules of construction applicable to statutes. *Carroll Blake Constr. Co. v. Boyle*, 140 Tenn. 166, 181, 203 S.W. 945, 948 (1918). Thus, a zoning ordinance should be construed consistently with state law, *Draper v. Haynes*, 567 S.W.2d 462, 465 (Tenn.1978), and if it can be construed in two ways, the courts should adopt the construction that upholds the ordinance's validity. *Rawlins v. Braswell*, 191 Tenn. 285, 291, 231 S.W.2d 1021, 1023 (1950); *Hermitage Laundry Co. v. City of Nashville*, 186 Tenn. 190, 193, 209 S.W.2d 5, 6 (1948).

The city insists that a double-wide manufactured home fits within the zoning ordinance's "mobile home" definition. While we respect the local authorities' long-standing interpretation, *see* 6 McQuillin on Municipal Corporations § 20.45, at 146 (3d ed. 1988), we decline to follow it in this case because doing so would be to construe the zoning ordinance in a manner inconsistent with Tenn.Code Ann. § 13–24–201. We prefer to interpret the ordinance in a manner consistent with state law.

■ Zoning ordinances should also be construed in favor of property owners' right to the free use of their property. *State ex rel. Morris v. City of Nashville*, 207 Tenn. 672, 680, 343 S.W.2d 847, 850 (1961); *State ex rel. Wright v. City of Oak Hill*, 204 Tenn. 353, 356, 321 S.W.2d 557, 559 (1959); *State ex rel. SCA Chemical Servs., Inc. v. Sanidas*, 681 S.W.2d 557, 562 (Tenn.Ct.App.1984).

A "mobile home" as defined in Section 12.10 of the zoning ordinance is a single, movable structure that arrives "complete" at the site where it is to be occupied. The word "complete" in the definition of "mobile home" modifies "structure." Because of the inclusion of the word "complete" in the ordinance's definition of "mobile home," we find, as did the Georgia Supreme Court, that a manufactured residential structure delivered to the site in two separate pieces was not a "mobile home" because it was not a complete structure at the time it was delivered to the site.[10] *City of Cordele v. Hill*, 250 Ga. 628, 300 S.E.2d 161, 162 (1983).

### IV.

We find that Tenn.Code Ann. § 13–24–201's protection extends to double-wide manufactured homes. Accordingly, we reverse the judgment and remand the case to the trial court for the entry of an order conforming to this opinion. We tax the costs of the appeal to the Metropolitan Government of Nashville and Davidson County for which execution, if necessary, may issue.

TODD, P.J., and LEWIS, J., concur.

---

**10.** The National Manufactured Housing Construction and Safety Standards Act's definition of "manufactured housing" is broad enough to include double-wide manufactured homes. *See* 42 U.S.C. § 5402(6) (1976). Many states, including the State of Tennessee, have incorporated this definition into their law by adopting the Uniform Standards Code for Manufactured Homes and Recreational Vehicles Act. *See* South Dakota Codified Laws Ann. § 34–34A–1.1 (Supp.1990); Tenn.Code Ann. § 68–36–202(4) (1987). However, like the city in this case, many municipalities have failed to follow suit. *See* 2 E. Ziegler, *Rathkopf on The Law of Zoning and Planning* § 19.02, at 19–5 (1990). Some municipalities, like the City of Charlotte, North Carolina, have adopted definitions of mobile homes or manufactured housing that are broad enough to include double-wide manufactured homes. *See* 2 R. Anderson, *American Law of Zoning* § 14.03, at 672 (3d ed. 1986).