**TENNESSEE DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION, Petitioner–Appellant,**

v.

**Mary Annette ALLISON, Respondent–Appellee.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Jan. 22, 1992.

Application for Permission to Appeal Denied by Supreme Court May 26, 1992.

Robert A. O'Connell, Nashville, for petitioner-appellant.

Frank J. Scanlon, Watkins, McGugin, McNeilly & Rowan, Nashville, for respondent-appellee.

OPINION

LEWIS, Judge.

This is an appeal by the Tennessee Department of Mental Health and Mental Retardation (Department) from the judgment of the trial court affirming the Tennessee Civil Service Commission's (Commission) decision to reverse the Administrative Law Judge's (ALJ) initial order upholding the Department's termination of respondent. The Commission reduced the termination to a three-day suspension.

The facts as found by the ALJ which are undisturbed by the Commission and supported by the record are as follows:

1. The Grievant was an Habilitative Therapy Technician at Clover Bottom Developmental Center, ("Clover Bottom"), a facility operated by the Department, at the time of her termination. The Department stipulated that prior to her termination, effective May 19, 1989, the Grievant had been a model employee during her 9½ year tenure with the Department. Her employment record consisted of superior performance evaluations and no disciplinary actions.

2. At the time of the incident in question, the Grievant was approximately 30 weeks pregnant.

3. On May 1, 1989, the Grievant was working in a training room in the Community Preparation Program area of Habilitative Services. As she entered the training room she was told by one of the residents, B.B. (to protect the confidentiality of the resident's identity, the resident was referred to as "B.B." throughout the course of the hearing and will be so referred to in this Order), that she had been hit by another resident. B.B. became quite upset, physically aggressive, and loud. The Grievant tried to get B.B. to sit in a chair in an attempt to calm her down. The Grievant was behind B.B., holding her arms, attempting to guide her to a chair. B.B. was yelling and struggling to get free, and on two or three occasions struck the Grievant in the stomach with her elbow. When they reached the chair, B.B. picked it up and began banging it on the floor. This entire episode went on for a few minutes until B.B. again struck the Grievant in the stomach with an elbow. The Grievant, still behind B.B., then struck B.B. on the left side of her face with the back of her right hand.

4. The blow was witnessed by Charlene Smith, an Habilitative Therapist. Upon observing the Grievant strike B.B., Ms. Smith immediately reported the incident to Mary Hamblen, her supervisor. Ms. Hamblen and Ms. Smith then went to the training room where they observed B.B. seated at a table with her head on her arms on the table. Ms. Hamblen observed a red mark on the side of B.B.'s face.

5. B.B. is a 40-year old, severely retarded female. B.B. is, at times, a very difficult resident for the Clover Bottom staff to contend with. She can be loud, verbally abusive, and physically aggressive. She has a history of striking other residents and staff members.

6. The Grievant admitted to striking B.B. She stated that she knew it was wrong, but she hit B.B. out of frustration and concern for her unborn child. The Grievant testified that she did not intend to hurt B.B., but was merely attempting to calm her down. She also stated that due to a staff shortage that day, there was no one in the area available to assist her.

7. At the time of the incident in question, Clover Bottom had in effect Policy No. 4.3.10.0, RESIDENT ABUSE/MISTREATMENT/NEGLECT. Section (I)(A)(1) provides that resident abuse oc-

curs when an employee "... actually touches (physical abuse) a resident in any manner which a reasonable person would recognize as likely to be harmful or painful or to cause mental anguish, ..." The Policy further states:

If an employee engages in conduct prohibited by this section, the employee is guilty of resident abuse which is personal conduct unbecoming a State employee, and the employee shall be dismissed. Such a violation is most likely to be determined to be gross misconduct within the meaning of the Rules and Regulations of the Tennessee Department of Personnel.

8. Also in effect at the time of the incident was Department of Mental Health and Mental Retardation Rule No. 0940–2–3–.03, RESIDENT OR PATIENT ABUSE BY EMPLOYEES. Subparagraph (a) provides that an employee shall not:

... actually touch a resident or patient in any manner which a reasonable person would recognize to be harmful or painful or to cause mental anguish, ...

The Rule further provides that:

If an employee engages in conduct prohibited by this rule, the employee is guilty of conduct against the good of the service, and the employee shall be dismissed. Such a violation is most likely to be determined to be gross misconduct.

Rule 0940–2–3–.02(2)(a) JUSTIFIED EMPLOYEE CONDUCT, provides that an employee who engages in conduct otherwise in violation of the Department's rules will not be subject to discipline if "the conduct is reasonably necessary to protect either the resident or patient or the employee or another person from harm, ..."

9. Dr. Catherine Terrell, Assistant Superintendent of Program Services at Clover Bottom, reviewed the matter and recommended that the Grievant be terminated. Dr. Terrell based her decision upon the seriousness of the incident and her understanding of the Department's interpretation of the Clover Bottom policy and the Department's rules that termination is required whenever an incident such as this occurs.

On 19 May 1989, respondent was terminated from employment by the Department. She subsequently filed a grievance with the Department. The hearings conducted at the third and fourth steps of the grievance procedure resulted in the upholding of her termination. On 8 September 1989, a fifth-step grievance hearing was held before an ALJ assigned by the Secretary of State to sit for the Tennessee Civil Service Commission in Nashville. On 22 September 1989, the ALJ found the facts set out above and concluded that respondent had violated Department Rule No. 0940–2–3–.03 and affirmed the Department's termination of her employment. On 27 October 1989, after her unsuccessful petition for a reconsideration of the ALJ order, respondent appealed the ALJ's order to the Commission.

Without disturbing the ALJ's findings of fact, the Commission issued its own initial order overturning the ALJ's order, converted the respondent's termination into a three-day suspension, and awarded the respondent back pay. The Department petitioned the Commission for a reconsideration of its initial order. The petition was overruled and the initial order subsequently became final. The Department then filed its petition in the Chancery Court for Davidson County for review of the agency action. On 19 April 1991, the Chancellor heard the appeal. On 23 April 1991 the Chancellor entered a memorandum and order affirming the Commission's decision. The Department has appealed from the judgment of the Chancery Court.

■ The Department has presented three issues which the respondent has succinctly stated as follows: "Whether or not the Tennessee Civil Service Commission has the statutory authority to reverse a decision of the Tennessee Department of Mental Health and Retardation to terminate a Department employee under circumstances which arguably mandate such termination pursuant to Department regulations."

When the Department of Mental Health and Mental Retardation was established, the General Assembly delegated to the Commissioner of the Department the power and the duty to "[m]ake and adopt rules and regulations, ... for the government, management, and supervision of each and all state mental health facilities; prescribe the powers and duties of the officers and employees thereof; ... and provide for the care, maintenance and treatment of the patients and residents therein." Tenn.Code Ann. § 33–1–203. Pursuant to this Section, the Department promulgated Rule 0940–2–3–.03 pertaining to resident or patient abuse by employees. This Rule requires automatic dismissal of an employee who "knowingly threatens to touch, attempt to touch, or actually touch a resident or patient in any manner which a reasonable person would recognize as likely to be harmful or painful or cause mental anguish" Rule 0940–2–3–.03. Such a rule is a proper subject of judicial notice, *Tennessee State Bd. of Education v. Cobb,* 557 S.W.2d 276, 278 (Tenn.1977), and has the force and effect of law. *State ex rel. Chapdelaine v. Torrence,* 532 S.W.2d 542, 547 (Tenn.1975).

The Department's primary, if not sole, argument is that the Department's Rule 0940–2–3–.03 precludes the Commission from overturning the Department's decision to terminate an employee. We respectfully disagree.

The General Assembly created the Civil Service Commission, gave it broad authority over the dismissal or disciplinary action of civil service employees, and provided a comprehensive and clear plan for employment, regulation, discipline and, if necessary, termination of civil service employees. Tenn.Code Ann. § 8–30–101, *et seq.*

Tennessee Code Annotated, Section 8–30–328, sets forth a grievance procedure for "regular employees" of the state. A "Regular employee" is "an employee who holds a civil service position of a permanent nature." Tenn.Code Ann. § 8–30–328(a)(2).

The general assembly vested the Civil Service Commission with the power and jurisdiction to have the final word regarding the discipline and termination of civil service employees. The Department's dismissal of a civil service employee is subject to the grievance procedure set forth in Tennessee Code Annotated, Section 8–30–328(a)(7), which provides: "The final step of this grievance procedure for regular employees shall be a request for review to the commission, and all decisions by the commission upon such requests for review *shall be final.* For all other employees the final step shall be the appointing authority." Tenn.Code Ann. § 8–30–328(a)(7) (emphasis added).

Tennessee Code Annotated, Section 8–30–328(e) provides: "When the commission rules in favor of an appealing employee, it shall order the employee to be reinstated or made whole, or both, without loss of pay or benefits." This statute does not contain any limitations on the Commission's authority to reverse termination of regular employees. There is also no limitation on the type or nature of the grievance a "regular employee" may bring to the Commission. Tenn.Code Ann. § 8–30–328(e).

If the Department is correct, and it cites no rule of law in support of its argument, then the intent of the legislature in creating the Civil Service Commission and giving it authority over discipline and/or dismissal of civil service employees can be thwarted by any department of the State of Tennessee simply by adopting a rule such as the one adopted by the Department in this instance.

■ A department or agency of the State created by the legislature cannot by the adoption of rules be permitted to thwart the will of the legislature. The legislature is elected by the citizens of Tennessee and as an elected body it speaks for the people on matters of public policy of the state. Unelected officers of a department or agency cannot adopt rules to circumvent statutes passed by the legislature. The powers to make the laws of the state are vested in the general assembly and not in administrative agencies of the state, even when the administrative agency properly promulgates rules and regulations.

The Department makes three arguments: 1) that its mandatory dismissal rule was duly promulgated and therefore should be given deference by the commission, 2) the commission's decision had the effect of illegally suspending the Department's Rule, and 3) because the commission allegedly exceeded its authority, its action is a nullity and should be reversed.

The Department assumes that the Commission's decision and the Department's Rule are mutually exclusive as a matter of law. It is the Department's insistence that upholding the Commission's decision nullified a duly promulgated regulation of the Department and conversely upholding the validity of the regulation requires nullification of the Commission's decision.

We find nothing to prevent the Department from having a valid mandatory dismissal regulation subject to review by the Commission should the aggrieved employee elect to follow the grievance route. We are of the opinion that upholding the Commission's decision in no way voids the regulation or prevents the Department from terminating its employees thereunder in the future. Where the regulation may be involved, some employees may not be entitled to a Commission review, others may not seek such a review, and some that do seek review may be unsuccessful in obtaining reinstatement.

We are of the opinion that the respective statutory duties of the Commission and the Department are easily harmonized and the underlying legislative intent with respect to those duties is not disturbed. *See, e.g., Tennessee Manufactured Housing Assoc. v. Metropolitan Government of Nashville,* 798 S.W.2d 254 (Tenn.App.1990).

The judgment of the Chancellor in affirming the Commission's initial order is affirmed with costs assessed to the appellant and the cause remanded to the Chancery Court for the collection of costs and any further necessary proceedings.

TODD, P.J., and CANTRELL, J., concur.