# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
April 14, 2010 Session

## GAYLE BERNARD AND EDWARD MICHAEL SHEA v. METROPOLITAN GOVERNMENT OF NASHVILLE/DAVIDSON COUNTY, TENNESSEE

Appeal from the Chancery Court for Davidson County
No. 05-1605-II     Carol L. McCoy, Chancellor

No. M2009-00812-COA-R3-CV - Filed August 3, 2010

This is the second appeal by two former police officers who sought retirement gifts provided for by Metro ordinance and police department policies. The officers requested the gifts and were denied based on lacking good standing at the time they retired, as required by the ordinance. The officers filed a declaratory judgment action as well as civil rights claims, which the trial court dismissed on jurisdictional grounds and for failure to state a claim, respectively. The Court of Appeals reversed the dismissal of the declaratory judgment action and remanded. On remand, the trial court found that, because the officers were under investigation for misconduct at the time of their retirement, they were not in good standing as required by the ordinance and, thus, not entitled to the retirement gifts. The officers appeal. Finding no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P.J., M.S., and FRANK G. CLEMENT, JR., J., joined.

David L. Raybin, Nashville, Tennessee, for the appellants, Gayle Bernard and Edward Michael Shea.

Sue B. Cain, Paul Jefferson Campbell, II, Lora Barkenbus Fox, Nashville, Tennessee, for the appellant, Metropolitan Government of Nashville/Davidson County, Tennessee.

**OPINION**

## I. Background

This is the second appeal in this case. The case was initiated as a declaratory judgment action and was dismissed by the trial court on the defendant's[1] motion to dismiss for lack of subject matter jurisdiction. On appeal, we held that a declaratory judgment was the proper action, reversed the trial court and remanded the case for a trial on the merits by judgment entered March 28, 2007; the mandate issued October 8, 2007.

On remand, the plaintiffs filed a Second Amended Complaint on Sept. 5, 2008,[2] seeking a declaration of their rights and for injunctive relief requiring the Department to issue them a retirement gun, badge and ID card. The Second Amended Complaint also asserted claims for breach of contract, violation of the Equal Protection Clause of the Fourteenth Amendment, violation of Due Process under 42 U.S.C. § 1983, and violation of 18 U.S.C. § 926C mandating an identification card for retired officers when the officer retires in good standing.

In order to place the present appeal into context, we recite facts previously found by this court:

> [Plaintiffs] E.J. Bernard ("Bernard")[3] and Edward Michael Shea ("Shea") (collectively, "[plaintiffs]") were Metropolitan police officers for Davidson County, Tennessee. Shea retired on January 1, 2001, [sic] after serving the force for twenty-eight years. Bernard retired on October 15, 2004, after serving the force for twenty-five years and one month. Both [plaintiffs] maintain that at the time of their retirement, they were in good standing with the police department. [Plaintiffs] assert that they are entitled to receive, upon their retirement, a gun, a badge, and a retired officer identification card. The Metropolitan Government of Nashville and Davidson County ("[defendant]") has refused to grant [plaintiffs'] requests.

---

[1] The parties will be referred to as their designations in the trial court.

[2] The plaintiffs had been granted leave to file the Second Amended Complaint by an order of the trial court entered on November 7, 2005.

[3] E.J. Bernard died while the first appeal was pending; the case was revived by his estate.

Section 24.44.110 [sic] of the Code of the Metropolitan Government of Nashville and Davidson County, Tennessee provides as follows:

> **2.44.110 Presentation of gun and badge to retiring officers.**
> The metropolitan police department shall make a gift of a gun and a badge to all retiring police officers who have at least twenty-five years of service upon their retirement and also to police officers who, regardless of years of service, receive a disability pension from the metropolitan government. To be eligible to receive the gun and badge, the police officer must retire in good standing and be eligible to receive a service pension or receive a disability pension. This section shall apply to all officers who have retired since July 1, 1979, and meet all the conditions set forth herein.

Further, Section IX of the General Orders of the police department 94-10 provides in relevant part as follows:

> **E. Identification Card**
> 5. The department shall make a gift of the identification card to all retiring employees who have at least twenty-five (25) years of service upon their retirement. To be eligible to receive the card, an employee must retire in good standing and be eligible to receive a service pension.
> 6. The card being used by the employee at the time of their retirement will be returned to the Personnel Section where it will be altered to read "RETIRED" in bold letters, or another card specifically designed for retired employees will be issued to them. The card will then be presented to the employee at the same time the badge is presented.

On December 21, 2004, [Plaintiff] Bernard, through counsel, requested a retired officer card. The police department refused the request in a letter addressed to Bernard's attorney dated January 12, 2005. The letter was from Deputy Chief of Police Steve Anderson ("Anderson"), and stated in relevant part:

> Our current policies regarding the eligibility to receive an identification card upon retirement, General Order 94-10 section IX.E.5, require that "an employee must retire in good standing."

While I agree that there is necessarily some subjectivity in the term "good standing", certainly, in the ordinary sense of these words, this would require that the employee's status at the time of retirement be positive or desirable in nature. I cannot make a determination that your client's status, at the time of retirement, could be characterized as such.

I also agree with your analysis that being "under investigation" at the time of retirement would not necessarily remove an employee from consideration for "good standing" status. If an employee was on schedule for a planned retirement and the investigation was for a relatively minor infraction, that employee should receive consideration for "good standing" status at the time of retirement. In the situation involving your client, however, the investigation concerns a matter very serious in nature which, if sustained, would have resulted in severe disciplinary action....

In the event the procedures concerning the "good standing" requirement are altered at some time in the future to preclude consideration of the surrounding circumstances at the time of retirement, Mr. Bernard could be reconsidered.

On February 14, 2005, [Plaintiff] Shea, through counsel, requested his retirement badge, retirement gun, and retired officer card. The police department refused the request in a letter addressed to Shea's attorney dated March 3, 2005. The letter was from Anderson, and stated in relevant part:

Your letter requests that Mr. Shea now receive a gun and badge pursuant to Metropolitan Code Section 2.44.110. As you are aware, a requirement of this ordinance is that the officer "must retire in good standing" in order to be eligible to receive the gun and badge. Mr. Shea retired in the year 2002 while both a criminal investigation and an administrative investigation were in progress.... Taking this into account, even in a light most favorable to Mr. Shea, I cannot find any manner in which to characterize his retirement as being in good standing. Therefore I could not make a recommendation that he now receive a departmental gun and badge.

Any indication that I may have previously given that the criminal charges pending at the time of Mr. Shea's retirement was the sole reason for not allowing him to receive a gun and

badge would be in error. I apologize if I did not express myself more clearly. Whether it is Mr. Shea, or any other employee, all of the circumstances must be taken into consideration. While it is true that Mr. Shea did have criminal charges pending, the very same conduct that brought about the criminal charges are also violations of our own rules and regulations. Even if there were no criminal charges pending, the administrative investigation into this conduct indicated that departmental charges should be brought and that termination should be considered. Mr. Shea retired, as it was his right to do so, prior to departmental charges being initiated.

I also need to point out that any consideration as to Mr. Shea's status at the time of his retirement was based on more than "some investigation" being in progress. The consideration was based on the underlying activities that gave reason to initiate both a criminal investigation and an administrative investigation....

*Bernard v. Metropolitan Gov't of Nashville and Davidson County*, 237 S.W.3d 658, 659-61 (Tenn. Ct. App. 2007).

Following some discovery on remand, a hearing was held and, in an order on February 6, 2009, the trial court found additional facts as follows:

At the time he retired (September 16, 2004), Det. Bernard was under investigation by the Police Department's Office of Professional Accountability ("OPA") regarding allegations [that] he had acted inappropriately during his investigation of the death of Deanie Alley Kelly. At the time he retired, Det. Bernard was under investigation for generating false or inaccurate reports, intimidating a witness, and making disparaging comments to the witness about the witness['] sexual orientation. Additionally, after his superiors removed him from the investigation of Ms. Kelly's death, Det. Bernard sought out this witness and again acted in an inappropriate manner towards him. Seeking out the witness, after being removed from the case, amounted to insubordination. The OPA investigation into Det. Bernard's activities occurred over several months, but Det. Bernard announced his retirement before the OPA investigators could interview him.

Mr. Shea retired on January 1, 2002, while he was under investigation by the Metropolitan Police Department's Burglary Division for accepting stolen

goods for resale. Mr. Shea shared space in a flea market/consignment store which trafficked in stolen items. Mr. Shea bought and sold used fishing equipment. A confidential informant presented Mr. Shea with goods which she represented were stolen and Mr. Shea paid her for them intending to resell them. This transaction was electronically recorded. After officers executed a search warrant on the business, Mr. Shea was read his rights and he was interviewed on August 25, 2001. During the interview he gave numerous contradictory statements about his involvement in the business.

Mr. Shea was subsequently indicted by a Davidson County Grand Jury. He pled not guilty and received pre-trial diversion. After successfully completing his diversionary period, his criminal record was expunged. At that point Mr. Shea sought his retirement gun, badge and identification card.

The trial court concluded that the gun, badge and identification card are not retirement "benefits," rather they are "gifts" to which an officer with 25 years of service is entitled so long as the officer is in good standing at the time of his or her retirement and that he or she is eligible to receive a service pension. The trial court also concluded that neither Detective Bernard nor Officer Shea retired in good standing and were, thus, ineligible for the retirement gift. The plaintiffs filed a motion to alter or amend, which was denied by the trial court; the plaintiffs appeal the trial court's final order.

The plaintiffs contend that the gun, badge and identification card are retirement benefits, not gifts, such that the trial court should have construed the ordinance and department rule in their favor. The plaintiffs also contend that the trial court erroneously refused to permit relevant discovery and dismissed their equal protection claims.[4]

## II. Analysis

### A. Declaratory Judgment Action

Tenn. Code Ann. § 29-14-103 allows "[a]ny person . . . whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder." The plaintiffs seek a declaration of their rights and status under

---

[4] As more fully discussed, *infra,* on remand plaintiffs filed a Motion to Compel Discovery and a Motion to Reconsider the Dismissal of Equal Protection Claims. A hearing was held on October 24, 2008, and in an order entered on November 10, the trial court denied both motions.

section 2.44.110 of the Code of the Metropolitan Government of Nashville and Davidson County, Tennessee and Section IX of the General Orders of the Metropolitan Police Department 94-10.

Metropolitan Code § 2.44.110 directs the police department to "make a gift of a gun and a badge to all retiring officers who have at least twenty-five years of service upon their retirement and also to police officers who, regardless of years of service, receive a disability pension from the metropolitan government." The ordinance, however, goes on to restrict the presentation of a retirement gun and badge to those police officers who "retire in good standing" and are "eligible to receive a service pension or receive a disability pension." Police General Orders 94-10, section IX contains similar language directing the department to make "a gift of the identification card to all retiring employees who have at least twenty-five (25) years of service upon their retirement." The order also requires an employee to retire in good standing and be eligible to receive a service pension to receive the card.

The trial court found that the gun, badge and identification card were retirement "gifts," as opposed to "benefits," to which retired police officers were entitled if they met the conditions set forth in the respective ordinance and rule. The trial court also found that both Bernard and Shea had more than 25 years of service with the department and were eligible for their service pensions. The trial court concluded, however, that neither Bernard nor Shea were in good standing with the police department at the time they retired and, consequently, they were not entitled to the retirement gifts.

The court's findings of fact have not been challenged. The plaintiffs take issue with the court's interpretation of the relevant ordinance and rule. First, the plaintiffs contend that the relevant items are retirement benefits and that as such the trial court should have construed the ordinance and rule in their favor. Secondly, the plaintiffs contend that the term "good standing" is an "objective" standard that requires the issuance of "mature charges" before an officer can be considered not in good standing. The plaintiffs argue that by failing to define the term "good standing" in its rules and regulations, the department created an unwritten rule that allows for "subjective" decision-making, which the plaintiffs contend should not be permitted.

Review of the trial court's conclusions of law is *de novo* with no presumption of correctness afforded to the trial court's decision. *See Kaplan*, 199 S.W.3d at 635. Construction of a legislative enactment or administrative rule is a question of law which appellate courts review *de novo*, without a presumption of correctness of the trial court's conclusions. *Barge v. Sadler*, 70 S.W.3d 683, 686 (Tenn. 2002); *Hill v. City of Germantown*, 31 S.W.3d 234, 237 (Tenn. 2000); *Gleaves v. Checker Cab Transit Corp., Inc.*, 15 S.W.3d

799, 802 (Tenn. 2000); *Exxonmobil Oil Corp. v. Metro Gov't. of Nashville and Davidson County*, 246 S.W.3d 31, 35 (Tenn. Ct. App. 2005).

The primary rule of statutory construction is "to ascertain and give effect to the intention and purpose of the legislature." *LensCrafters, Inc., v. Sundquist*, 33 S.W.3d 772, 777 (Tenn. 2000); *Carson Creek Vacation Resorts, Inc. v. Dept. of Revenue*, 865 S.W.2d, 1, 2 (Tenn. 1993); *Exxonmobil*, 246 S.W.3d at 35; *McGee v. Best*, 106 S.W.3d 48, 64 (Tenn. Ct. App. 2002). To determine the legislature's intent, courts should limit their consideration of an unambiguous statute to the words of the statute itself, giving these words their natural and ordinary meaning. *Tenn. Manufactured Housing Ass'n v. Metro. Gov't.*, 798 S.W.2d 254, 257 (Tenn. Ct. App. 1990); *Neff v. Cherokee Ins. Co.*, 704 S.W.2d 1, 3 (Tenn.1986); *State v. Williams*, 690 S.W.2d 517, 529 (Tenn.1985). The statute should be read "without any forced or subtle construction which would extend or limit its meaning." *Nat'l Gas Distributors, Inc. v. State*, 804 S.W.2d 66, 67 (Tenn. 1991). As our Supreme Court has said, "[w]e must seek a reasonable construction in light of the purposes, objectives, and spirit of the statute based on good sound reasoning." *Scott v. Ashland Healthcare Center, Inc.*, 49 S.W.3d 281, 286 (Tenn. 2001) (citing *State v. Turner*, 913 S.W.2d 158, 160 (Tenn. 1995)).

Applying these principles to Metropolitan Code § 2.44.110 and Section IX of the police General Order 94-10, we first conclude that the gun, badge and identification card are gifts, not benefits as the plaintiffs contend. Both the ordinance and the department rule expressly refer to these items as gifts. We must presume that the legislative body selected these words deliberately and "give effect to every word, phrase, clause and sentence of the act." *Tidwell v. Collins*, 522 S.W.2d 674, 676-77 (Tenn. 1975); *In re Estate of Dobbins*, 987 S.W.2d 30, 34 (Tenn. Ct. App. 1998); *Tenn. Manufactured Housing Ass'n. v. Metro. Gov't.*, 798 S.W.2d 254, 257 (Tenn. Ct. App. 1990).

The plain language of the ordinance and the rule show that the Metropolitan council and the police department, respectively, intended to offer a gun, badge and identification card as a gift upon retirement to all police officers serving at least twenty-five years with the department as well as to those officers who receive a disability pension, regardless of the number of years of service. The council and police department, however, conditioned these gifts on the officer being in good standing with the department at the time he or she retires and is eligible to receive a service pension. Neither the ordinance nor the police department's rules define good standing.

In the *Webster's Third International Dictionary* "good" means "having a favorable or auspicious character," "marked by or conveying approval or commendation," "making a favorable impression with respect to moral character: inspiring trust," "something that possesses desirable qualities, promotes success, welfare or happiness, or is otherwise

beneficial," "in a satisfactory, competent, or adequate manner." "Standing" means "length of service or experience esp[ecially] as determining relative place, rank, pay, or privilege, "position or condition in society or in a profession: status; . . . esp[ecially] good reputation," "position relative to a standard of achievement."[5] While both "good" and "standing" have more than one meaning, the meanings are not contradictory nor are they confusing when "good" is used in conjunction with "standing." We think that the ordinary person would understand that, when not otherwise defined, a person in "good standing" is someone who possesses desirable qualities and has achieved or maintained a good reputation. In the context of a police officer's employment, it would be generally understood that a person is in good standing if he or she has performed in a satisfactory, competent, or adequate manner such that he or she is in compliance with all applicable rules and regulations.

Both Bernard and Shea knew at the time they chose to retire that they were under investigation for conduct that, if proven true, failed to comply with department rules and regulations. They admit that they "retired when they were under 'clouds' of investigation." Bernard had been removed from a homicide case assignment because of questions about the veracity of his reports and inappropriate interactions with the victim's family. Shea was under criminal investigation because of allegedly illegal activities while off duty. These facts do not support a conclusion that at the time of their retirement either Bernard or Shea were considered by the department as having desirable qualities or performing their duties in a completely satisfactory manner in compliance with department rules or regulations.

The plaintiffs attempt to analogize use of the term "good standing" here with other contexts in which the term is often used, such as employment law, homeowner's association policies, union membership, and persons who are members of a state bar. The plaintiffs contend that very often the term "good standing" is defined by the employee handbook, contract, or association by laws. The plaintiffs assert that "[t]his Court should not permit the government to 'import' terms and constructions which are not within the four corners of the pension provision under examination."

We find no merit in the plaintiffs' assertion that because "good standing" is not specifically or separately defined within the ordinance or the rules that it is "meaningless." We presume that legislative or administrative bodies select the words they use carefully and deliberately and that the words used carry meaning and purpose. *Tennessee Growers, Inc. v. King*, 682 S.W.2d 203, 205 (Tenn. 1984); *Clark v. Crow*, 37 S.W.3d 919, 922 (Tenn. Ct. App. 2000). We also do not find that the department "imported" terms and constructions that

_____

[5] Standing can have a variety of meanings depending on the context, *e.g.*, "up-right on the feet or in place," but the above cited definitions are the most applicable to the ordinance's and rule's use of the word "standing."

are inconsistent with the ordinary and natural meaning of the words "good standing." While an entity or organization might find it helpful to define "good standing" within their particular context, *e.g.*, to be a member in "good standing" in a home owner's association may require timely payment of dues or other fees, the plaintiffs point to no rule and we have found none that requires every term within a rule or legislative enactment to be defined. When words are not specifically defined by statute, the rules of statutory construction direct us to use their ordinary meaning.[6] *Tenn. Manufactured Housing Ass'n.*, 798 S.W.2d at 257.

The plaintiffs also assert that the "merits" of the investigations into their conduct is irrelevant to their standing at the time they retired, that their decision to retire at the time they did "cannot be transformed into anything sinister" and that they had every right to retire when they did.[7] We do not agree that the existence of unresolved questions regarding their compliance with the department's rules and regulations which required investigation at the time of their retirement was irrelevant to the determination of whether they were entitled to the gift of the gun, badge and identification card. Regardless of whether the investigations would have led to "mature charges" or disciplinary action,[8] the fact remains that Bernard and Shea chose to retire at a time when their standing within the department was seriously in question and before those questions were resolved. Consequently, we affirm the judgment of the trial court that neither Bernard nor Shea was in good standing with the department at the time they retired and, as a result, they are not entitled to the retirement gift of a gun,

---

[6] Many legislative drafting guides advise that when words are being used in their ordinary or normal dictionary meaning it is better not to define them as superfluous definitions can cloud meaning. *See*, *e.g.*, *Legislative Drafting Manual,* New Mexico Legislative Council (2004); *Legislative Research and Drafting Manual,* Massachusetts General Court, 5d. (2010); *Legislative Drafting Manual,* Office of Legal Services for The Tennessee General Assembly (2003).

[7] The plaintiffs raise concerns that the police department may institute investigations without merit or prolong them indefinitely in order to prevent an officer from retiring in good standing and being eligible to receive the gun, badge and identification card. While such concerns may be valid in the abstract, we think that the application of the natural and ordinary meaning of the words "good standing" to the facts would adequately address any such concerns. Additionally, there is nothing in this record to indicate that the investigations into Bernard's or Shea's conduct were invalid or meritless attempts to discredit the officers prior to their retirement.

[8] The record reflects that the Office of Professional Accountability's final report of the administrative investigation into Detective Bernard's conduct concluded that, even though Bernard was no longer subject to departmental discipline, he violated General Order 04-03 Personal Behavior H, related to discrimination, and I, related to intimidation, as well as General Order 04-03 Official Obligations S, related to false or inaccurate reports. The record reflects with respect to Officer Shea that Deputy Chief of Police Anderson informed Officer Shea that regardless of any pending criminal charges, "the administrative investigation into [Mr. Shea's] conduct indicated that departmental charges should be brought and that termination should be considered."

badge and identification card as provided for in the Metropolitan Code § 2.44.110 or Section IX of Police General Order 94-10.

## B. Equal Protection Claim and Discovery Request

The original complaint filed June 23, 2005, alleged generally that there were other police officers "similarly situated to plaintiffs" who, upon retirement, received their gun, badges and identification cards. On August 18, 2005, the defendant filed a motion to dismiss all of the plaintiffs' claims under Tenn. R. Civ. P. 12.02(6) for failure to state a claim. The motion was heard and on September 26, 2005, an order was entered dismissing the equal protection claim and including the following language: "the Equal Protection claim is dismissed without prejudice." The court declined to dismiss the remainder of the claims.

On September 13, 2005, the plaintiffs filed a First Amended Complaint in which they identify two former police officers whom they alleged retired while under investigation for misconduct, but who were permitted to have a gun, badge and retirement certificate; plaintiffs alleged that the "irrational policy constitutes a denial of equal protection, in violation of the Fourteenth Amendment to the United States Constitution." The defendant filed a second motion to dismiss the equal protection claim on October 12, arguing that the First Amended Complaint failed to state a claim for relief. In response, the plaintiffs filed a motion to amend the First Amended Complaint. The proposed amendment identified five retired officers, including the two previously identified, and the years in which they retired, and alleged that these retired officers received their guns and badges upon retirement despite being under investigation for misconduct. A hearing on the two motions was held and the trial court, in an order entered on November 7, granted both motions; the order dismissing the equal protection claims included the following language: "this claim is dismissed without prejudice, even considering the amendments to the First Amended Complaint." Plaintiffs did not appeal either of the September 26 or November 7, 2005 orders dismissing the equal protection claims.

On September 5, 2008, following the remand of this case, plaintiffs filed a Second Amended Complaint.[9] On the same day, the plaintiffs filed a document styled "Motion to Compel Discovery, Memorandum of Law in Support, Certificate of Good Faith Effort to

---

[9] The Second Amended Complaint included the factual allegations proposed by the plaintiffs in their October 14, 2005, Motion to Amend the First Amended Complaint. The Second Amended Complaint also contended that the department's application of the "good standing" requirement denied them of equal protection of laws in violation of the Fourteenth Amendment to the United States Constitution and Article 11, Section 8 of the Tennessee Constitution. The section of the Second Amended Complaint containing this claim was styled "THIRD CLAIM FOR RELIEF: VIOLATION OF EQUAL PROTECTION [This Claim was Dismissed without prejudice by the Court by Order entered November 7, 2005]" (brackets in original).

Resolve Discovery and Motion to Reconsider Dismissal of Equal Protection Claims."[10] A hearing was held on the motion on October 24, 2008 and, by order entered November 10, the court denied the motion to compel and denied the motion to reconsider the dismissal of the equal protection claims. On January 13, 2009, the defendant filed a document styled "Supplemental Answer to Second Amended Complaint" and, in response to the equal protection claim, stated that "[t]he equal protection claim has been dismissed so no response to this paragraph is necessary."

The plaintiffs appeal the trial court's November 10 order asserting that the trial court should have reinstated the equal protection claims and allowed discovery relevant to the claims. The defendant asserts that the plaintiffs waived the issue of equal protection by failing to appeal the trial court's November 7, 2005 order when they appealed the order of December 12, 2005, dismissing the remaining claims on jurisdictional grounds. The plaintiffs argue that, because the trial court's November 7, 2005 order stated that the dismissal was "without prejudice," the plaintiffs were allowed to re-assert the equal protection claim in the future, which the plaintiffs contend that they did on September 5, 2008, when the case was remanded to the trial court.

We find this issue is not properly before this Court. The trial court's November 7, 2005 order granted the defendant's motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Tenn. R. Civ. P. 12.02(6). A dismissal for failure to state a claim is a dismissal on the merits. *Isham v. City of Harriman*, 447 S.W.2d 364, 366 (Tenn. 1969). Accordingly, a court should not dismiss a complaint for failure to state a claim "unless it appears that the plaintiff can prove no set of facts in support of his or her claim that would warrant relief." *Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999); *Fuerst v. Methodist Hospital South*, 566 S.W.2d 847, 848 (Tenn. 1978).

The trial court's November 7, 2005 order is somewhat ambiguous in that it adjudged, on the merits, that the plaintiffs failed to state a claim upon which relief could be granted "even considering the amendments to the First Amended Complaint" and yet dismissed the claim "without prejudice." A dismissal after an adjudication on the merits bars a plaintiff from prosecuting any later lawsuit on the same claim, while a dismissal "without prejudice" allows a plaintiff to re-file the lawsuit within applicable limitations period. *See*, BLACK's LAW DICTIONARY (8th Ed. 2004). Under the Tennessee Rules of Civil Procedure, a dismissal operates as an adjudication on the merits except for a voluntary dismissal under Tenn. R. Civ. P. 41.01 or a dismissal for lack of jurisdiction, improper venue or for lack of an indispensable party. *See* Tenn. R. Civ. P. 41.02(3). While some discretion is given to the

---

[10] In the body of the document, the plaintiffs identified the order dismissing the equal protection claims as the order entered November 7, 2005.

court to specify in an involuntary dismissal order under Tenn. R. Civ. P. 41.02 that the order does not operate as an adjudication on the merits, no such discretion is given to the court when dismissing a claim or case based on a failure to state a claim.

Assuming *arguendo* that the defendant's October 12, 2005 motion to dismiss for failure to state a claim was converted by the trial court to an involuntary dismissal under Tenn. R. Civ. P. 41.02, the plaintiffs were required to re-file the dismissed claim within one year of the entry of the trial court's order dismissing the action, which, in this case, would have been November 6, 2006. *See* Tenn. Code Ann. § 28-1-105.[11] The plaintiffs did not file their Second Amended Complaint until September 5, 2008, more than three years after the trial court's November 7, 2005 order dismissing the equal protection claim; nor did they appeal the November 7, 2005 order when they appealed the trial court's December 20, 2005 order dismissing the plaintiffs' remaining claims.[12]

Having found that the plaintiffs are barred from re-asserting a claim alleging violations of the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution, the plaintiffs' asserted issues that the trial court should have reconsidered its previous dismissal of the claim and allowed discovery related to it are not properly before us.

## III. Conclusion

In accordance with the principles of statutory construction, we apply the plain and ordinary meaning to the Metropolitan ordinance and department rules and find that neither Detective Bernard nor Officer Shea were in good standing with the police department at the

---

[11] Tenn. Code Ann. § 28-1-105(a) provides in relevant part:

If the action is commenced within the time limited by a rule or statute of limitation, but the judgment or decree is rendered against the plaintiff upon any ground not concluding the plaintiff's right of action, or where the judgment or decree is rendered in favor of the plaintiff, and is arrested, or reversed on appeal, the plaintiff, or the plaintiff's representatives and privies, as the case may be, may, from time to time, commence a new action within one (1) year after the reversal or arrest.

[12] Since the trial court's November 7, 2005 order dismissing the equal protection claim did not dispose of all the claims of the plaintiffs, they had the choice of either seeking an interlocutory appeal of the order under Tenn. R. App. P. 9 or waiting until a final judgment was entered by the trial court, which in this case was December 20, 2005, and appeal all of the issues under Tenn. R. App. P. 3. There is nothing in the record to indicate that the plaintiffs sought appellate review of the trial court's November 7, 2005 order by either method.

time they retired as required by the ordinance and rules to be entitled to the retirement gift of a gun, badge and identification card provided for in the same ordinance and rules. Consequently, we affirm the judgment of the trial court. The plaintiffs' remaining issues related to discovery and the merits of their equal protection claim are not properly before us and, thus, we decline to address them.

Costs of the appeal are taxed to the plaintiffs.

_____
RICHARD H. DINKINS, JUDGE