## B. M. HAWKINS *v.* THOS. A. KERCHEVAL, *et al.*

1. POLICE COMMISSIONERS. *Quasi judicial tribunal. Chancery court jurisdiction.* The police commissioners of the city of Nashville, under the statutes creating them, constitute a *quasi* judicial tribunal, whose duties cannot be performed in the first instance by any other body, and the court of chancery has no jurisdiction to enjoin them in advance from performing their functions.

2. SAME. *Powers.* The police commissioners are only authorized to hear and determine complaints against a member of the police force for failure to properly discharge his duties, and if they undertake to remove a policeman for any other cause their action will be without authority and void.

3. SAME. *How proceedings are revised.* The proceedings of police commissioners as a board may be revised, if erroneous, by the writs of *certiorari* and *supersedeas* in the circuit court, and, if their proceedings are void, the remedy of the aggrieved official is by *mandamus* to compel them to reinstate him.

4. SAME. *Removing policeman.* It is no ground for removing a policeman from office that he has brought a suit against the city in good faith for the assertion of a supposed legal right.

5. MANDAMUS. *May be brought in chancery court.* Under the Code, sec. 3567, *et seq.*, the proceeding by *mandamus* is a form of civil action, which, since the act 1877, ch. 79, may be brought in the chancery court, and according to the forms of that court.

---

### FROM DAVIDSON.

---

Appeal from the Chancery Court at Nashville. A. G. MERRITT, Ch.

J. C. BRADFORD for complainant.

W. K. MCALLISTER, JR., for defendant.

COOPER, J., delivered the opinion of the court.

By the charter of the city of Nashville, the city council is authorized to elect three police commissioners, whose duties are to select and appoint policemen of the city, and certify their selection and appointment to the city council; "also, to hear and determine all complaints against any member of the police force for failure to properly discharge his duties, and remove the officer or party complained of, if need be, and fill vacancies in the police force as they may occur. All other questions and powers in regard to said police force are vested in the mayor and city council." By an ordinance of the city council it is provided: "That each member of the city police shall hold office during his good behavior, but may at any time be suspended or removed for misconduct, or disobedience of orders, or incompetency, and may be suspended from pay for violation of discipline or orders."

The complainant Hawkins was a sergeant in the police force, having been a policeman for several years, his compensation as sergeant being fixed by ordinance at $80 per month. By a subsequent ordinance passed on May 16, 1879, to go into effect October 1, 1879, the compensation was reduced to $70 per month. The complainant received the reduced compensation under protest made at the first monthly payment, and continued so to do until April, 1881, when he brought suit against the city for the difference between the amount received, and the amount he would have been entitled to under the former ordinance. The defendant

Kercheval, as mayor of the city, thereupon suspended the complainant from office until charges preferred could be investigated, and gave him written notice of the fact under date of May 10, 1881. In this notice, the complainant was charged "with insubordination, disobedience of the laws of the city and conduct unbecoming an officer, and in this you have instituted suit against the city, and are attempting to obtain by said suit what you claim as back pay," etc. The only offense of the complainant was the bringing of the suit under the circumstances. On May 13th, the defendant Kercheval, as mayor, notified the complainant that the police commissioners would meet at 4 o'clock P. M., of that day to try him on the charges made, the city council having referred the matter to the commissioners. The complainant appeared before the commissioners at the time indicated, and, at his instance, the trial was postponed until 1 o'clock P. M., of the next day. Before that hour, the original bill filed in this cause was filed against Kercheval and the commissioners, and a *fiat* obtained enjoining further proceedings by the commissioners. Before the execution of the bond required by the *fiat*, the complainant, by his counsel, read the bill to the commissioners, and notified them that an order for an injunction had been obtained. The complainant not proposing to go into the trial, the commissioners, solely upon evidence of the pendency of the suit of complainant against the city, undertook to remove him from his office. About this time, and before they had separated, the commissioners were notified

that the injunction bond had been given. The injunction inhibited the commissioners from proceeding with the trial of the charges preferred by the defendant Kercheval, and inhibited Kercheval from taking any further steps to have complainant discharged. The mayor and commissioners were also enjoined from interfering with complainant in the discharge of the duties of his office upon the charge mentioned. The only prayer of the bill was that, on final hearing, the injunction be made perpetual.

On June 15, 1881, the complainant filed an amended bill in which the facts that took place as above stated after the filing of the original bill were set out, with the additional fact that the commissioners had elected a successor to the complainant on the police force. The complainant asked that the proceedings of the defendants in suspending and removing him be declared void, and he be held to be still a member of the police, entitled to perform the duties of the office, and to receive compensation therefor. He further prayed that the defendants be compelled to revoke their action, and to reinstate complainant on said police force.

The defendants filed an answer to the original and amended bills, in which they, in effect, admitted the facts stated in the bills and above set forth. They insisted that the conduct of the complainant in bringing suit against the city, and being active in inducing other policemen to sue, was harrassing and vexatious, and amounted to insubordination; that the charges were made by the mayor in good faith; that the

commissioners examined the testimony, had jurisdiction of the charges preferred, exercised the same according to the forms of law, and, upon adequate testimony, rendered the verdict of removal.

One of the commissioners who acted in the matter,. and joined in the answer was a commissioner *pro tempore* during the absence of a regular commissioner. Another one of the defendant commissioners resigned,. and a successor was appointed in his place. By a decree, entered by consent of parties, it was ordered that the "cause be in all things revived" against the regular and the new commissioners, and "stand in the same condition as at the time" the original defendants were succeeded by them, "the proof now taken to be read as evidence on the trial, and to have the same force and effect as if taken after the revivor," all questions as to annulling the action of the commissioners, and reinstating the complainant being reserved. This order was made on May 22. 1882. The new defendants then filed a demurrer,. which the chancellor, on July 19, 1882, upon argument, overruled. It was thereupon agreed by the parties that the cause should be heard as if a formal answer had been filed by the new parties setting up the matters relied upon in the demurrer. On the same day, the chancellor rendered a final decree, holding that the action of the defendant, Kercheval, in suspending the complainant, and the action of the commissioners in removing him from office were void,. and ordering the then commissioners to restore complainant to his office at once, to which end the clerk

was directed to issue a peremptory *mandamus.* The defendants appealed.

The police commissioners are authorized by law to select and appoint policemen for the city of Nashville, and to hear and determine all complaints against any member of the police force, remove him if need be, and fill vacancies. The commissioners in acting as a board to hear and determine complaints made against a member of the police, and remove him if need be, constitute a *quasi* judicial tribunal, whose duties cannot be performed in the first instance by any other body. To enjoin them from acting would be to deprive the city of Nashville of the only mode provided by law for the settlement of the particular matters entrusted to them, and there is not the slightest warrant, nor the least necessity for the intervention of a court of chancery by its injunctive process with their *quasi* judicial action. The proceedings of such a tribunal may always be revised by the writ of *certiorari,* and its sentence annulled, or the proper judgment rendered by the circuit court: *Durham* v. *United States,* 4 Hayw., 54, 69; *Saunders* v. *Russell,* 10 Lea, 293. If the proceedings are absolutely void, the remedy of the policeman aggrieved would be by *mandamus* to be restored to his office : *Morley* v. *Power,* 5 Lea, 691. And, therefore, it has been well said by a leading writer on the subject of injunctions, that "equity will not interfere by injunction for the purpose of controlling the action of public officers constituting inferior *quasi* judicial tribunals, such as boards of supervisors, commissioners of highways. and the like, on matters prop-

erly pertaining to their jurisdiction, nor will it review and correct errors in the proceedings of such officers, the proper remedy being at law by the writ of *certiorari:* High on Inj., sec. 797 ; *Mooers* v. *Smedley,* 6 Johns., Ch., 28; *Hyatt* v. *Bates,* 40 N. Y., 164.

The original bill was filed to enjoin the police commissioners from acting on the complaints made against the complainant, and was clearly unwarranted, as were all proceedings under it. The amended and supplemental bill was, in substance, a bill asking that the complainant be reinstated in his office as sergeant of police upon the ground 'that the proceedings of the commissioners were void. The defendants raised no objection to the jurisdiction of the court, and at first made no defense. Both bills were taken for confessed against them. On May 1, 1882, the *pro confesso* order was set aside by consent of parties, upon an agreement that the case should be finally tried at the then existing term of the chancery court. The answer of the original defendants was then filed, in which they substantially admit the facts alleged in the bill. At a subsequent day of the term, the order reviving the suit against the then commissioners was made by consent, upon the express agreement, as we have seen, that the suit was to stand in the same condition as at the time the new parties succeeded the original parties as commissioners, and that the "proof now taken" should be read as evidence on the trial. The new parties were, therefore, not entitled to demur to the bill. The matters of demurrer, moreover, would only be such as the original police commissioners could have

made, the proceedings being against them in their official capacity, and the suit standing in the same condition as it stood against them: *State ex rel.* v. *Puckett,* 7 Lea, 709.

The bill as amended was in substance a proceeding by the complainant to compel the mayor of the city and the police commissioners to reinstate him in an office from which he had been improperly suspended by the mayor, and never legally removed by the commissioners. It was an application for a *mandamus.* through the forms of the court of chancery, and was so treated by the chancellor. Under the Code, section 3567, *et seq.,* a proceeding by *mandamus* is a form of civil suit or action, and may, by virtue of the act of 1877, ch. 79, enlarging the jurisdiction of the chancery court, be instituted in that court. It does not involve unliquidated damages for injuries to person, property or character.

By the ordinance of the city of Nashville quoted at the beginning of this opinion, each member of the police force is entitled to hold his office during good behavior, subject at any time to be suspended or removed for misconduct, or disobedience of orders, or incompetency. And, by the statute authorizing their creation, the police commissioners are required to hear and determine all complaints against any member of the police force "for failure to properly discharge his duties," and remove him if need be. It distinctly appears from the answer of the defendants in this case, as well as from the testimony of the defendants themselves, that the complainant was not guilty of any misconduct in his office, of disobedience of orders, or

incompetency, and that he was not complained of, or tried for a failure to properly discharge his duties. His sole offense, in the eyes of the mayor and commissioners was in instituting a suit against the city, and attempting thereby to obtain certain back pay to which he thought himself entitled. It is impossible to see how the bringing of an action by the complainant, in good faith for the assertion of a supposed right, can be treated as "a failure to properly discharge his duties" as a policeman. The city ordinance holds out to persons who will act as policemen the promise that they shall be retained during good behavior, and shall not be removed except for a failure to properly discharge the duties of the office. The power of the commissioners to remove from office is limited. In such a case, the charge upon which a party is sought to be removed must be specified in writing, and notice thereof given to the accused. There should be a fair trial upon competent testimony. If in fact formal charges within the power conferred upon the commissioners had been made out, and notice thereof given to the accused, any irregularity in the proceedings could only have been corrected by *certiorari*. But in the case before us, there was clearly no charge within the power, nor any trial upon such a charge, and the proceedings were therefore void: *Morley* v. *Power*, 5 Lea, 691. The complainant has never been legally removed from office, and is still a sergeant of the police, and as such entitled to be reinstated in all his rights.

There is no error in the decree of the chancellor, and it will be affirmed with costs.