# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
November 17, 2006 Session

## E.J. BERNARD, ET AL. V. METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY

### Appeal from the Chancery Court for Davidson County
No. 05-1605-II     Carol McCoy, Chancellor

---

### No. M2006-00165-COA-R3-CV - Filed on March 28, 2007

---

Two former police officers sought several tangible benefits of retirement guaranteed by Metro ordinances and police department policies. The officers requested such benefits and were denied, the Deputy Chief of Police citing a lack of good standing, as required by the ordinances, as the reason. The officers filed a declaratory judgment action. Metro filed a motion to dismiss asserting that a common law writ of *certiorari* should have been filed instead. The trial court granted the motion to dismiss. We reverse and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and FRANK G. CLEMENT, JR., J., joined.

David L. Raybin, Nashville, Tennessee, for the appellants, E.J. Bernard and Edward Michael Shea.

Francis H. Young, Nashville, Tennessee, for the appellee, Metropolitan Government of Nashville and Davidson County.

## OPINION

### I. FACTUAL BACKGROUND

Appellants E.J. Bernard ("Bernard") and Edward Michael Shea ("Shea") (collectively, "Appellants") were Metropolitan police officers for Davidson County, Tennessee. Shea retired on January 1, 2001, after serving the force for twenty-eight years. Bernard retired on October 15, 2004, after serving the force for twenty-five years and one month. Both Appellants maintain that at the time of their retirement, they were in good standing with the police department. Appellants assert that they are entitled to receive, upon their retirement, a gun, a badge, and a retired officer

identification card. The Metropolitan Government of Nashville and Davidson County ("Appellee") has refused to grant Appellants' requests.

Section 24.44.110 of the Code of the Metropolitan Government of Nashville and Davidson County, Tennessee provides as follows:

**2.44.110     Presentation of gun and badge to retiring officers.**
The metropolitan police department shall make a gift of a gun and a badge to all retiring police officers who have at least twenty-five years of service upon their retirement and also to police officers who, regardless of years of service, receive a disability pension from the metropolitan government. To be eligible to receive the gun and badge, the police officer must retire in good standing and be eligible to receive a service pension or receive a disability pension. This section shall apply to all officers who have retired since July 1, 1979, and meet all the conditions set forth herein.

Further, Section IX of the General Orders of the police department 94-10 provides in relevant part as follows:

**E. Identification Card**
5.     The department shall make a gift of the identification card to all retiring employees who have at least twenty-five (25) years of service upon their retirement. To be eligible to receive the card, an employee must retire in good standing and be eligible to receive a service pension.
6.     The card being used by the employee at the time of their retirement will be returned to the Personnel Section where it will be altered to read "RETIRED" in bold letters, or another card specifically designed for retired employees will be issued to them. The card will then be presented to the employee at the same time the badge is presented.

On December 21, 2004, Appellant Bernard, through counsel, requested a retired officer card. The police department refused the request in a letter addressed to Bernard's attorney dated January 12, 2005. The letter was from Deputy Chief of Police Steve Anderson ("Anderson"), and stated in relevant part:

Our current policies regarding the eligibility to receive an identification card upon retirement, General Order 94-10 section IX.E.5, require that "an employee must retire in good standing." While I agree that there is necessarily some subjectivity in the term "good standing", certainly, in the ordinary sense of these words, this would require that the employee's status at the time of retirement be positive or desirable in nature. I cannot make a determination that your client's status, at the time of retirement, could be characterized as such.

I also agree with your analysis that being "under investigation" at the time of retirement would not necessarily remove an employee from consideration for "good standing" status. If an employee was on schedule for a planned retirement and the investigation was for a relatively minor infraction, that employee should receive consideration for "good standing" status at the time of retirement. In the situation involving your client, however, the investigation concerns a matter very serious in nature which, if sustained, would have resulted in severe disciplinary action. . . .

In the event the procedures concerning the "good standing" requirement are altered at some time in the future to preclude consideration of the surrounding circumstances at the time of retirement, Mr. Bernard could be reconsidered.

On February 14, 2005, Appellant Shea, through counsel, requested his retirement badge, retirement gun, and retired officer card. The police department refused the request in a letter addressed to Shea's attorney dated March 3, 2005. The letter was from Anderson, and stated in relevant part:

Your letter requests that Mr. Shea now receive a gun and badge pursuant to Metropolitan Code Section 2.44.110. As you are aware, a requirement of this ordinance is that the officer "must retire in good standing" in order to be eligible to receive the gun and badge. Mr. Shea retired in the year 2002 while both a criminal investigation and an administrative investigation were in progress. . . . Taking this into account, even in a light most favorable to Mr. Shea, I cannot find any manner in which to characterize his retirement as being in good standing. Therefore I could not make a recommendation that he now receive a departmental gun and badge.

Any indication that I may have previously given that the criminal charges pending at the time of Mr. Shea's retirement was the sole reason for not allowing him to receive a gun and badge would be in error. I apologize if I did not express myself more clearly. Whether it is Mr. Shea, or any other employee, all of the circumstances must be taken into consideration. While it is true that Mr. Shea did have criminal charges pending, the very same conduct that brought about the criminal charges are also violations of our own rules and regulations. Even if there were no criminal charges pending, the administrative investigation into this conduct indicated that departmental charges should be brought and that termination should be considered. Mr. Shea retired, as it was his right to do so, prior to departmental charges being initiated.

I also need to point out that any consideration as to Mr. Shea's status at the time of his retirement was based on more than "some investigation" being in progress. The consideration was based on the underlying activities that gave reason to initiate both a criminal investigation and an administrative investigation. . . .

Appellants filed a declaratory judgment action in Chancery Court. Appellee filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction, asserting that declaratory judgment was

improper, and that a common law writ of *certiorari* was instead the proper remedy. The Final Order of the trial court, filed December 20, 2005, states as follows:

> Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction came on for hearing on December 9, 2005. Upon consideration of the motion, the response thereto, the reply to the response, the argument of counsel and the record herein, it is
>
> ORDERED, ADJUDGED AND DECREED that defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction be and hereby is GRANTED. In granting this motion the Court expressly relies on the Tennessee Court of Appeals decision in <u>Moore and Assoc., Inc. v. West</u>, 2005 WL 176501.

Appellants appeal the issue of whether the trial court had subject matter jurisdiction to adjudicate a declaratory judgment and civil rights action seeking to construe the application of a Metropolitan Government ordinance and police department general order. Appellee states the issues on appeal as follows: (1) whether Deputy Chief Anderson's decision denying certain retirement benefits to Appellants is properly reviewed by writ of *certiorari* or a declaratory judgment, and (2) whether the Davidson County Chancery Court lacks subject matter jurisdiction over this case since it was filed over sixty days after the administrative decision. E.J. Bernard died while this appeal was pending, and the case was revived by his estate.

## II. Standard of Review

Regarding a motion to dismiss for lack of subject matter jurisdiction, the Supreme Court of Tennessee has stated:

> A motion to dismiss for lack of subject matter jurisdiction falls under Tennessee Rule of Civil Procedure 12.02(1). The concept of subject matter jurisdiction involves a court's lawful authority to adjudicate a controversy brought before it. See *Meighan v. U.S. Sprint Communications Co.*, 924 S.W.2d 632, 639 (Tenn. 1996); *Standard Sur. & Casualty Co. v. Sloan*, 180 Tenn. 220, 230, 173 S.W.2d 436, 440 (1943). Subject matter jurisdiction involves the nature of the cause of action and the relief sought, see *Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn. 1994), and can only be conferred on a court by constitutional or legislative act. See *Kane v. Kane*, 547 S.W.2d 559, 560 (Tenn. 1997); *Computer Shoppe, Inc. v. State*, 780 S.W.2d 729, 734 (Tenn. Ct. App. 1989). Since a determination of whether subject matter jurisdiction exists is a question of law, our standard of review is de novo, without a presumption of correctness. See *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

*Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn.2000).

## III. Analysis

The main issue in this case is the appropriateness of the action, and whether declaratory judgment or a common law writ of *certiorari* is proper. Appellants argue that they are entitled to a declaratory judgment, in accordance with Tennessee Code Annotated section 29-14-103[1]. Appellee argues that Anderson's decision was administrative in nature, the administrative decision is entitled to a high degree of deference, and it may only be challenged through a common law writ of *certiorari*. Appellee maintains that the decision may only be reversed if Anderson is found to have exceeded his jurisdiction or acted illegally, basing such argument on Tennessee Code Annotated section 27-8-101[2]. Appellee further maintains that, according to Tennessee Code Annotated section 27-9-102[3], a petition for a writ of *certiorari* must be filed within sixty days from the date of the administrative decision being challenged, and that Appellants' declaratory judgment action was not filed within the sixty day limit.

The sufficiency of the record is important in determining which procedural avenue is most appropriate. The record in this case consists of the two letters written on behalf of Appellants making their requests, and the two response letters from Anderson denying such requests due to lack of good standing. The record contains no evidence to support or oppose Anderson's decision. In 2000, this Court stated:

> It is well settled that the scope of review under the common law writ of certiorari is very narrow. Review under the writ is limited to whether "the inferior board or tribunal (1) has exceeded its jurisdiction, or (2) has acted illegally, arbitrarily, or fraudulently." *McCallen v. City of Memphis*, 786 S.W.2d 633, 638 (Tenn.1990); see also *Powell v. Parole Eligibility Bd.*, 879 S.W.2d 871, 873 (Tenn.Ct.App.1994). The

---

[1] **29-14-103. Construction of statutes and written instruments.**

Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder.

[2] **27-8-101. Constitutional basis.**

The writ of *certiorari* may be granted whenever authorized by law, and also in all cases where an inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally, when, in the judgment of the court, there is no other plain, speedy, or adequate remedy. This section does not apply to actions governed by the Tennessee Rules of Appellate Procedure.

[3] **27-9-102. Filing and contents of petition.**

Such party shall, within sixty (60) days from the entry of the order or judgment, file a petition of *certiorari* in the chancery court of any county in which any one (1) or more of the petitioners, or any one (1) or more of the material defendants reside, or have their principal office, stating briefly the issues involved in the cause, the substance of the order or judgment complained of, the respects in which the petitioner claims the order or judgment is erroneous, and praying for an accordant review.

intrinsic correctness of the decision is not reviewable under the writ. See *Arnold v. Tennessee Bd. of Paroles*, 956 S.W.2d 478 (Tenn.1997). As stated in *Powell*, "it is not the correctness of the decision that is subject to judicial review, but the manner in which the decision is reached." *Powell*, 879 S.W.2d at 873.

*Coffelt v. Tenn. Dep't. of Corr.*, 2000 Tenn. App. LEXIS 682, at *5-6 (Tenn.Ct.App.2000). Therefore, the purpose of the common law writ of *certiorari* is to review the record of the agency making the decision to determine whether or not such decision was illegal, arbitrary, fraudulent, or beyond the scope of the agency's jurisdiction.

Additional opinions of this Court elaborate further on the topic of the importance of the record in making a writ of *certiorari* determination:

> Generally speaking, review of an administrative decision by way of the common law writ is confined to the question of whether the inferior board or tribunal has exceeded its jurisdiction or acted illegally, arbitrarily, capriciously, or fraudulently. T.C.A. § 27-8-101 (Supp.1997); *McCallen*, 786 S.W.2d at 638; *Hoover v. Metropolitan Bd. of Zoning Appeals*, 924 S.W.2d 900, 904 (Tenn.App.1996); *Gallatin Hous. Auth. v. City Counsel, City of Gallatin*, 868 S.W.2d 278, 279-80 (Tenn.App.1993). This question typically involves a determination of whether the record contains material evidence to support the decision below. See *Hoover v. Metropolitan Bd. of Housing Appeals*, 936 S.W.2d 950, 954 (Tenn.App.1996); *Hall v. Shelby County Retirement Bd.*, 922 S.W.2d 543, 545 (Tenn.App.1995); *Davis Group (MC), Inc. v. Metropolitan Gov't of Nashville and Davidson County*, 912 S.W.2d 178, 180 (Tenn.App.1995); and *Metropolitan Air Research Testing Auth., Inc. v. Metropolitan Gov't of Nashville and Davidson County*, 842 S.W.2d 611, 619 (Tenn.App.1992).

*Harless v. City of Kingsport*, 1998 Tenn. App. LEXIS 207, at *11-12 (Tenn.Ct.App.1998).

> It is the position of this court that a reviewing court can not determine whether the decision of an administrative body is supported by material evidence unless the administrative body makes findings of facts setting forth the reasons for its decision. . . . [I]t is our opinion that a reviewing court can not determine if there was material evidence to support a decision if the reviewing court is unaware of the basis for the decision.

*Weaver v. Knox County Bd. of Zoning Appeals*, 122 S.W.3d 781, 785 (Tenn.Ct.App.2003).

There is no way to determine whether Anderson's decision was illegal, arbitrary, fraudulent, or beyond his jurisdiction. The record in this case, consisting of the four letters, does not allow for a proper review of the agency's decision. There is no evidence to examine that might indicate the motivation behind Anderson's decision. The manner in which Anderson reached his decision, and the basis therefor, is unclear. There was never a hearing or an administrative adjudication at which

a formal record could be developed. Appellants wish to have such a hearing regarding their standing with the department, in which proof is submitted and they are reassured that Anderson's decision is not simply arbitrary and subjective, or that it is supported by material and applicable evidence.

In determining whether a declaratory judgment action is proper, or whether the case is subject to a limited review in court by common law *certiorari*, the record leaves little room for doubt. Section 2.44.110 of the Code of Metropolitan Government of Nashville and Davidson County provides for a mandatory gift of a gun and a badge to all retiring police officers with 25 years of service who retire "in good standing." Tennessee Code Annotated section 29-14-103 provides that "Any person . . . whose rights, status, or other legal relations are affected by a . . . municipal ordinance . . . may have determined any question of construction or validity arising under the . . . ordinance, . . . and obtain a declaration of rights, status or other legal relations thereunder." Under Tennessee Code Annotated section 29-14-103, when it comes to declaratory judgment, there is no logical reason to treat a "gift" under a municipal ordinance any differently than a "gift" under a written agreement. *Tenn. Div. of the United Daughters of the Confederacy v. Vanderbilt Univ.*, 174 S.W.3d 98, 114 (Tenn.Ct.App.2005). Of even more significance, the record in this case neither discloses who has the authority to make the decision as to whether or not a police officer has retired in good standing, nor gives any indication as to what authority Anderson had to make such a decision or in what capacity he purported to act. The record does not establish that he was "an inferior tribunal, board, or officer exercising judicial functions." Tenn.Code Ann. § 27-8-101. Nothing in the record shows that Anderson is "the administrative official charged with the duty" of deciding the issue of whether or not the retiring police officers are "in good standing". *Thompson v. Dept. of Codes Admin.*, 20 S.W.3d 654, 659 (Tenn.Ct.App.1999).

The statutory scheme implementing common law *certiorari* "plainly presupposes that a judicial or quasi-judicial proceeding is the subject of review and that a 'record' of evidence, common in such proceedings, is available for certification to the reviewing court." *Fallin v. Knox County Bd. of Comm'rs*, 656 S.W.2d 338, 341 (Tenn.1983).

The entire *certiorari* scheme envisions a "final order or judgment" before a board, commission, or officer exercising judicial or quasi-judicial authority, with a record of the hearing preserved for judicial review. *Stockton v. Morris & Pierce*, 110 S.W.2d 480, 485-86 (Tenn.1937).

In reaching its decision, the trial court relied on *Moore v. West*, 2005 Tenn. App. LEXIS 41 (Tenn.Ct.App.2005), which resulted from a dispute between Moore & Associates ("Moore"), a corporation, and the Metropolitan Government of Nashville and Davidson County ("Metro"). Moore designed and built a hotel, installing a buffer as required by the zoning code. At the final inspection of the property, the zoning administrator refused to issue a certificate of compliance certifying that the buffer complied with the applicable zoning laws. Moore filed a declaratory judgment action asking the court to declare the buffer to be in compliance with the applicable zoning laws, and to order the zoning administrator to issue the certificate of compliance. Metro filed a motion to dismiss, arguing that a declaratory judgment action was improper to review the decision of the zoning administrator. The trial court denied its motion to dismiss, and Metro appealed.

On appeal, this Court held that the appropriate method for review of the zoning administrator's decision was the common law writ of *certiorari*, not an original action for declaratory judgment. In reaching its conclusion, this Court relied upon a 1983 Tennessee Supreme Court case for its established rules:

> It is our opinion that an action for declaratory judgment, as provided by T.C.A. §§ 29-14-101 – 29-14-113, rather than a petition for certiorari is the proper remedy to be employed by one who seeks to invalidate an ordinance, resolution, or other legislative action of county, city or other municipal legislative authority enacting or amending zoning legislation. . . .
>
> . . . .
>
> We wish to point out, however, that the remedy of certiorari provided by T.C.A., §§ 27-8-101, 27-9-101 – 27-9-113, will continue to be the proper remedy for one who seeks to overturn the determination of a Board of Zoning Appeals as provided by T.C.A., § 13-7-106 *et seq.* and T.C.A., § 13-7-205 *et seq.* This distinction in remedies is made because the determinations made by a Board of Zoning Appeals are administrative determinations, judicial or quasi-judicial in nature, and are accompanied by a record of the evidence produced and the proceedings had in a particular case, whereas, the enactment of ordinances or resolutions, creating or amending zoning regulations, is a legislative, rather than an administrative, action and is not ordinarily accompanied by a record of the evidence, as in the case of an administrative hearing. *See Holdredge v. City of Cleveland, supra*; *Reddoch v. Smith*, 214 Tenn. 213, 379 S.W.2d 641 (1964).

*Fallin*, 656 S.W.2d at 342-43. Therefore, a party seeking to invalidate an ordinance should file a declaratory judgment action. A party seeking to challenge a determination made in accordance with an ordinance should file a writ of *certiorari*. However, an administrative decision is usually accompanied by a record of the evidence.

There is a marked difference between *Moore* and the case at bar. In *Moore*, the zoning administrator refused to issue a permit to Moore, who immediately filed a declaratory judgment action without exhausting its administrative remedies by appealing to the Board of Zoning Appeals. This Court held:

> Essentially, Moore & Associates argues that a party can avoid the limited standard of review applicable to common law writ of *certiorari* by simply choosing not to pursue the administrative remedy available to it. We disagree.

*Moore*, 205 Tenn.App. LEXIS at *16-17.

An appeal to the Board of Zoning Appeals would have produced a record and a final judgment which would be subject to review in court by a writ of *certiorari*. In the case at bar, as in the *Moore* case, no record was made before the official responsible for the governmental action. In

the *Moore* case, an appeal to the Board of Zoning Appeals was available to Moore.  In the case at bar, not only is there nothing in the record to indicate that Anderson had any authority to determine the "good standing" issue, but there is also nothing in the record to indicate that Appellees Bernard and Shea could have administratively appealed the act of Anderson.

Thus, the very purpose to be served by the declaratory judgment statute is to "obtain a declaration of rights, status or other legal relations" under the Metropolitan ordinance.  Tenn.Code Ann. § 29-14-103.

The judgment of the trial court is reversed, and the case is remanded to the trial court for adjudication of the declaratory judgment action.  Costs of the cause are assessed to Appellee.


_____
WILLIAM B. CAIN, JUDGE