Robert BEAN, et al.

v.

WILSON COUNTY SCHOOL
SYSTEM, et al.

Court of Appeals of Tennessee,
AT NASHVILLE.

September 22, 2015 Session

Filed October 29, 2015

Application for Permission to Appeal
Denied by Supreme Court
February 18, 2016

Michael R. Jennings, Lebanon Tennessee, for the appellant, Wilson County School System.

Timothy A. Davis, Lebanon, Tennessee, for the appellees, Robert Bean and Jessica Bean.

## OPINION

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and KENNY ARMSTRONG, J., joined.

This case involves a residency dispute relevant to a child's enrollment in a Wilson County public high school. After school officials determined that the child was not a resident of Wilson County, they informed her parents that the child could not attend high school in the county school system. The parents filed suit in chancery court seeking injunctive relief related to the child's enrollment in school and participation in athletics. After an evidentiary hearing, the trial court determined that the child lived in Wilson County and enjoined the local board of education from interfering with the child's enrollment. The trial court also declared that the child should be afforded the same opportunities as other students as it relates to participation in athletics. On appeal, we affirm.

## Background and Procedural History

The Appellees in this appeal, Robert and Jessica Bean, are the parents of the minor child, Kathryn Bean ("Kathryn" and collectively with her parents, "the Beans"). In March 2014, Kathryn's parents submitted a "Student Transfer Application" to Wilson County Schools concerning Kathryn's enrollment for the 2014–2015 academic year. The application requested that Kathryn, a rising ninth grader, be allowed to attend a different Wilson County school, Wilson Central High School, rather than her zoned school, Mt. Juliet High School. The application stated that the Beans resided at 117 Faulkner Lane, Mt. Juliet, Tennessee 37122, which is in Wilson County, and indicated that Kathryn planned to participate in several sports sanctioned by the Tennessee Secondary School Athletic Association. As is of particular relevance to this appeal, we note that the top of the application form contained the following proviso: "The Wilson County school system does not accept students whose primary legal guardian lives outside Wilson County, nor K–8 students that are zoned for the Lebanon Special School District." On April 1, 2014, the then-Deputy Director of Student Services for Wilson County Schools, Mickey Hutson, approved the transfer request.

In June 2014, Chuck Whitlock ("Mr. Whitlock"), the Wilson County Director of School Health and Athletics, received a phone call from an anonymous community member who alleged that the Beans lived outside Wilson County and were using a fraudulent address. After he received this call, Mr. Whitlock conducted a property records search and discovered that the mailing address for the taxes associated with the Faulkner Lane property was a residential address in Davidson County. After Mr. Whitlock contacted Stan Moss ("Mr. Moss"), Attendance Director for Wilson County Schools, about the residency issue, the two planned to schedule a time where they could investigate the situation together. On July 31, 2014, the day before the school year was scheduled to commence, Mr. Whitlock and Mr. Moss traveled unannounced to the Faulkner Lane address that Kathryn's parents had listed on her transfer application. During this visit, Mr. Whitlock and Mr. Moss walked around the property, peaked into windows, and talked with several of the Beans' neighbors. Following this investigation,[1] Mr. Moss consulted with Dr. Donna

---

1. We observe that, per Mr. Whitlock's testimony, he and Mr. Moss made two other un-

Wright ("Dr. Wright"), the Director of Schools for Wilson County Schools. They decided that Kathryn would not be able to attend school in Wilson County, and Mr. Moss called Kathryn's father to inform him of this decision.

On August 1, 2014, the date that the school year commenced, Kathryn's parents filed suit in the Wilson County Chancery Court seeking an injunction requiring Kathryn's admission to Wilson Central High School. In pertinent part, the complaint asserted that Kathryn would suffer irreparable harm if she was not allowed to immediately enroll in school. Named as Defendants were the Wilson County School System, Dr. Wright, and Pat Suddarth ("Ms.Suddarth"), the principal of Wilson Central High School. In seeking relief against these Defendants, Kathryn's parents prayed that an injunction be granted "without notice or hearing." Although a copy of the order is absent from the record transmitted to us on appeal, apparently the trial court heeded the Appellees' request and entered a "Temporary Injunctive Order" requiring that Kathryn be allowed to enroll in Wilson Central High School immediately.

On August 21, 2014, Kathryn's parents filed a motion requesting the trial court to determine Kathryn's rights to attend Wilson Central High School. The motion recited the essential background facts that necessitated the filing of the August 1 complaint and prayed that the trial court provide further clarification regarding Kathryn's educational rights. Namely, the motion stated that Kathryn needed "a specific ruling ... that [she] be allowed to attend Wilson Central High School for the

duration of her high school years and that she be allowed to participate in extra curricular activities without retaliatory actions from the school and/or school system."

On August 26, 2014, the Wilson County Attorney filed a motion to dismiss on behalf of all of the named Defendants. The motion asserted that the filed complaint failed to state a claim upon which relief could be granted, specifically averring that the relief sought by Appellees was "inconsistent with Tennessee State law and the polices of the Wilson County Board of Education, as authorized by State Education law, and inconsistent with common law." The motion also contended that no basis existed for imposing individual liability against Dr. Wright or Ms. Suddarth. Moreover, the motion stated that the Wilson County School System was not the proper party to be sued. According to the motion, the Wilson County Board of Education was the governing body charged with establishing educational policy consistent with state law.

A hearing on the motion to dismiss was apparently scheduled for September 4, 2014, but on that date, Kathryn's parents announced orally in court that they were nonsuiting their case. Despite this announcement, no order was ever entered disposing of the lawsuit. On September 24, 2014, Kathryn's parents filed a motion seeking to set aside their prior oral voluntary dismissal. The motion stated that the parties had engaged in settlement discussions and averred that the prior oral nonsuit was the product of a specific understanding that Kathryn's parents had gained from the settlement talks. After Wilson County Schools sent a letter outlining the parameters of the supposed agree-

announced visits to the Faulkner Lane property "within a week to ten days of the initial visit." These additional unannounced visits

were made subsequent to the commencement of the Appellees' lawsuit.

ment, however, Kathryn's parents observed that the outlined terms did not comport with their understanding of what had been agreed to during the settlement discussions. Following the filing of the motion, an agreed order was entered wherein the trial court ordered that the prior oral nonsuit be set aside.

On October 1, 2014, Kathryn's parents filed another motion with regard to Kathryn's involvement in extracurricular activities. Although Kathryn had initially been allowed to participate in athletics at Wilson Central High School following the commencement of the lawsuit, the motion alleged that the school board had recently made the decision to prevent her athletic participation. The motion stressed that Kathryn was an aspiring college athlete and requested that the Defendants be enjoined from barring Kathryn's participation in athletics at Wilson Central High School in the future.

A trial in this matter occurred on November 4, 2014. Prior to hearing proof on the issue of Kathryn's residency, the trial court considered several issues concerning the sufficiency of the complaint that had been filed by Kathryn's parents. First, the trial court entertained arguments that had been raised in the Defendants' August 26, 2014 motion to dismiss. In addition to stating that no basis existed to sue either Dr. Wright or Ms. Suddarth, counsel for Defendants argued that the named governmental entity, the "Wilson County School System," was improperly included as a party. As counsel explained, the Wilson County Board of Education was the legal body that governed schooling issues, not the "Wilson County School System."

After alerting the trial court's attention to these issues, counsel for Defendants noted that although Kathryn's parents had recently moved for injunctive relief to allow Kathryn to participate in high school athletics, the filed complaint technically only requested an injunction in relation to Kathryn's enrollment in Wilson Central High School. Counsel for Defendants conceded, however, that he was prepared to try issues pertaining to both Kathryn's enrollment in school and her participation in athletics. After the trial court stated that it was going to allow Kathryn's parents to file an amended complaint to rectify the issues identified by Defendants' counsel,[2] it proceeded to hear proof pertaining to the question of the Beans' residency.

The proof consisted of oral testimony and a number of photographic and documentary exhibits. The first witness to testify was Kathryn's father, Robert Bean ("Mr. Bean"). Mr. Bean testified that he and his wife owned the home on Faulkner Lane and had lived there since 2008. He acknowledged that Wilson County Schools had previously investigated his family with regard to his older daughters when they attended Wilson Central High School and that the investigation had resulted in a determination by the prior Director of Attendance that his family lived at the Faulkner Lane residence.

With respect to his family's current living arrangement, Mr. Bean testified that they lived at the Faulkner Lane residence. Although he admitted that he and his family spent a lot of time at a Davidson County property, Mr. Bean explained that the Davidson County property was where his office was located. He stated that he and

<hr/>

**2.** We observe that Kathryn's parents filed an amended complaint on November 12, 2014. The amended complaint named only the Wilson County Board of Education as a Defendant and requested injunctive relief concerning both Kathryn's enrollment in Wilson Central High School and her participation in extracurricular activities, including sports.

his wife spent several hours at the office each day and noted that he and his family washed most of their clothes at the Davidson County property. Although he also testified that Kathryn often came to the Davidson County property after school to do her homework, he stated that the family generally slept each night at the Faulkner Lane property in Wilson County.

Mr. Bean explained that although he and his wife previously owned the Davidson County property in question, they sold it several years ago. He testified that the property was being rented by his business, Tennessee Nature Center, and that the rent was paid for by the business. Mr. Bean explained that, as a part of his business, many animals were kept at the Davidson County property, including three bobcats, a Siberian lynx, and a serval.

Following Mr. Bean's testimony, Kathryn's mother, Jessica Bean ("Ms.Bean") testified. Ms. Bean testified that she had heard her husband's testimony and that it was true and correct. Like her husband, she explained that the Davidson County property was where the two of them took care of their business obligations. She stated that her family lived in Wilson County and even testified that the family had two housecats that generally stayed at the Faulkner Lane residence.

The next witness to testify was Kathryn. At the time of the hearing, Kathryn was fifteen years of age. Kathryn testified that she was a freshman student at Wilson Central High School and stated that she had recently received an athletic letter for her participation in volleyball. She expressed interest in attending Florida State University following high school, where she hoped to play volleyball and major in marine biology. Consistent with the testimony of her parents, Kathryn told the court that she slept at the Faulkner Lane residence each night.

After Kathryn finished testifying, the trial court heard proof from Mr. Whitlock, the Wilson County Director of School Health and Athletics. Mr. Whitlock generally testified as to the importance of ensuring that all student-athletes are eligible to participate in sports. In particular, he noted that if a student-athlete participated in sports using a false address, a subsequent determination of ineligibility could result in a school's forfeiture of games and a loss of post-season opportunities, in addition to individual penalties for the offending student. After testifying about these concerns, Mr. Whitlock described his efforts in investigating the Beans' residency. In addition to describing his visit to the Faulkner Lane property immediately prior to the start of the academic year, Mr. Whitlock summarized his visits to both the Faulkner Lane and Davidson County properties that occurred in October 2014. The October visits, he noted, were made in accordance with the trial court's request that he and Mr. Moss prepare a report concerning Kathryn's residency.

According to Mr. Whitlock, both he and Mr. Moss visited the Faulkner Lane property on October 6, 2014. Kathryn's parents were present for the visit, and Mr. Whitlock stated that his interactions with them were pleasant. Nonetheless, he opined that the "typical indicators of . . . a lived-in house" were lacking at the Faulkner Lane property. Of note, Mr. Whitlock commented that there were very few items of decor or family pictures.

When Mr. Whitlock visited the Davidson County property on October 7, 2014, he was accompanied by Pam Perry, the Administrative Assistant to the Director of Schools. Mr. Whitlock testified that Mr. Bean took them on a tour of the residence on the property and stated that Mr. Bean was "very cordial." According to Mr.

Whitlock, the Davidson County residence appeared "well lived in." He noted that the beds were unmade, but apparently used. Moreover, he noted that clothing "of all sorts" was at the home and that there were family pictures, opining that it was "what you would typically see in a home."

The last witness to testify was Mr. Moss, the Attendance Director for Wilson County Schools. Mr. Moss testified that his position required him to fulfill many duties, including ensuring that all students attending Wilson County Schools are properly zoned. He stated that he did not take any issue with what Mr. Whitlock had testified to concerning the Faulkner Lane residence. However, when asked by counsel for Appellees why Kathryn had been cleared to play sports in September of 2014, Mr. Moss admitted that Kathryn's residency was a factor in the decision.

On November 24, 2014, the trial court entered an order in response to the proof heard at the November 4 hearing. In its order, the trial court granted Kathryn's parents the injunctive relief they had sought regarding Kathryn's enrollment in Wilson Central High School. Moreover, the trial court declared that Kathryn should have the same rights as other students with regard to athletic participation. In pertinent part, the trial court's order stated as follows:

> The Court finds the injunction prohibiting the Wilson County School Board from interfering with Kathryn Bean being allowed to attend Wilson Central High School shall remain in effect. The Court finds that she and her parents are residents of Wilson County. The Court finds that she can participate in all sports at the school so long as she is eligible to participate in all sports. She has no rights above anyone else in this process, but is to be treated like anyone else when trying out.
>
> * * * *
>
> The Court finds all witnesses who testified to be credible. Robert Bean, Jessica Bean and Kathryn Bean all testified under oath that they spend a considerable amount of time at the [Davidson County] property because that was their work place; but they all testified they lived at 117 Faulkner Lane, Mt. Juliet, Tennessee and spent practically every night there. This was not refuted or rebutted.
>
> * * * *
>
> Based on the comments that I've made above, I'm going to allow her to attend school in Wilson County. And I will prohibit, without a warranted reason, the Board of Education from interfering with her right to participate in extracurricular activities, sports, et cetera.

This appeal followed.

### Issues Presented

In its brief, the Wilson County Board of Education ("the Board") raises the following issues for our review, restated verbatim as follows:

1. As participation in high school extracurricular activities, including athletics, are a privilege and not a right, did the Court err in enjoining the Wilson County Board of Education from interfering with Appellees' right to participate in extracurricular activities, i.e. sports?

2. If there is no right to participate in high school extracurricular activities, did the Trial Court lack subject matter jurisdiction to hear this case?

3. Did the Trial Court err in issuing a Temporary Injunctive Order?

4. Is the decision of the Trial Court against the weight of the evidence?

5. Should expert testimony have been required to interpret the amount of monthly usage of a water bill?

## Standard of Review

On appeal, we review the trial court's findings of fact "de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R.App. P. 13(d). We review the trial court's resolution on a question of law *de novo*, but no presumption of correctness attaches to the trial court's legal conclusions. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn.2000).

## Discussion

At issue generally in this case is the question of Kathryn's residency. Notwithstanding her parents' desire that she attend Wilson Central High School, the Board maintains that Kathryn's residency precludes her from attending school there. Before addressing the specific issues raised by the Board in its appeal of the trial court's final order, we briefly consider a preliminary concern that has been alluded to during the pendency of this appeal. Interspersed throughout the Board's brief is the suggestion that Kathryn's parents pursued this lawsuit improperly. At several points, for example, the Board remarks that Kathryn's parents failed to exhaust available administrative remedies. At another point, the Board observes that the action filed by Kathryn's parents was not one for a writ of certiorari. Although

the argument is not thoroughly developed in the Board's brief, there is an underlying suggestion that the trial court lacked jurisdiction with regard to Kathryn's enrollment in school. We must reject this suggestion.

It is true that one's failure to exhaust administrative remedies will defeat a reviewing court's subject matter jurisdiction when exhaustion is a clear statutory requirement. *Pickard v. Tenn. Water Quality Control Bd.*, 424 S.W.3d 511, 523 (Tenn.2013). In this case, however, we know of no specific statutory provision even providing for an administrative remedy in this context.[3] Nor do we know what the extent of the supposed administrative remedy is. Although the Board frequently references the availability of an administrative remedy, nowhere does it specifically state what type of administrative recourse would have been available to Kathryn's parents. There is simply no proof in the record of what administrative remedies they could have pursued.

Although the Board's brief makes a passing reference to the fact that the filed lawsuit was not one for a writ of certiorari—as if to suggest that a petition for a writ of certiorari would have been the proper way to facilitate judicial review—we again fail to find any error on the part of the trial court. As a general matter, it is true that equity will not interfere with public officers constituting quasi-judicial tribunals, "the proper remedy being at law by the writ of *certiorari*." *Hawkins v. Kercheval*, 78 Tenn. 535, 540–41 (Tenn. 1882) (citations omitted). As already not-

---

3. Although we recognize that Tennessee Code Annotated section 49–6–3201 provides a procedure by which parents may appeal student assignments to the local board of education, we do not construe that statute as providing a means by which parents can challenge a school system's refusal to enroll a student

based on nonresidency status. Again, the statute speaks in terms of challenging the *assignment* of a student to a particular school. *See* Tenn.Code Ann. § 49–6–3201 (2013). When a student is refused enrollment based on the failure to establish residency, he or she is not assigned by the school system.

ed, however, there is no indication from the record what administrative recourse would have been available to Kathryn's parents. Absent any proof of the character of the administrative procedure allegedly available to review the residency determination, we are unable to conclude that a direct action into court by way of seeking an injunction was impermissible. The entire *certiorari* scheme envisions a 'final order or judgment' before a board, commission, or officer exercising judicial or quasi-judicial authority, with a record of the hearing preserved for judicial review. *Bernard v. Metro. Gov't of Nashville and Davidson Cnty.*, 237 S.W.3d 658, 664 (Tenn.Ct.App.2007) (citation omitted). Moreover, the statutory scheme implementing common law certiorari " 'plainly presupposes that a judicial or quasi-judicial proceeding is the subject of review' " and that a record of the evidence is available to the reviewing court. *Id.* (citation omitted). Because there is no proof of what administrative remedies might have been available to the Beans, we cannot assume they exist, nor can we assume that they would produce the type of record that is amenable to judicial review. Because we conclude that the trial court properly asserted jurisdiction over the request for an injunction, we now turn to the remaining issues specifically raised by the Board.

*Appropriateness of the Trial Court's Order Concerning Kathryn's Athletic Participation*

■ As we perceive it, the first two issues presented for our review are functionally one and the same. Starting with the proposition that participation in high school athletics is a privilege as opposed to a right, both issues challenge the propriety of the trial court's order granting relief as it relates to high school athletics. Indeed, considering both issues in tandem, it is clear that the Board's central concern is that the trial court lacked subject matter jurisdiction to afford any relief as it relates to Kathryn's athletic participation at Wilson Central High School.

■ In support of its assertions of error, the Board cites to a number of Tennessee decisions wherein our courts have concluded that participation in high school sports is a privilege, not a right. We do not dispute the validity of these cases. Although several commentators have questioned the wisdom of such analysis,[4] in Tennessee, like the majority of jurisdictions, the right to participate in athletics is considered to be "a mere privilege." *Tenn. Secondary Sch. Athletic Ass'n v. Cox*, 221 Tenn. 164, 425 S.W.2d 597, 602 (1968) (citations omitted); *Wingad v. Tenn. Secondary Sch. Athletic Ass'n*, No. 02A01–9111CH00275, 1992 WL 213380, at *4 (Tenn.Ct.App. Sept. 4, 1992) (citation omitted). Because there is no legal right to participate in sports, participation in interscholastic athletics is deemed to "fall[ ] outside the protection of the due process clause of the Fourteenth Amendment." *Wingad*, 1992 WL 213380, at *4. We are constrained by this precedent and agree that Kathryn's partic-

---

4. *See* Ray Yasser & Matthew Block, *Upon Further Review: Recognizing Procedural Due Process Rights for Suspended High School Athletes*, ENT. & SPORTS LAW, Fall 2008, at 1, 27 ("While courts have crafted spurious rationales for denying basic due process rights to student-athletes, after analyzing the purpose for due process protections, the explosion of athletic participation since the 1970s, and the

integral nature of athletics to the educational process, these decisions are not defensible."); Derwin L. Webb, *Home–Schools and Interscholastic Sports: Denying Participation Violates United States Constitutional Due Process and Equal Protection Rights*, 26 J.L. & EDUC. 123, 127 (1997) ("Unfortunately, the courts have rarely found that a right to participate exists in high school sports.").

ipation in sports is not entitled to due process protection. To the extent that the trial court's final order contains language suggesting that Kathryn's athletic participation *is* entitled to due process protection, we agree that the trial court's order was in error.[5] As previously stated, one's participation in interscholastic athletics falls outside the protections of the Constitution's due process clause.

With that said, we find no error in the substance of what the trial court ordered of the Board. In this case, the trial court did not order the Board to allow Kathryn to participate in sports without any restrictions or qualifications. Rather, it merely declared that Kathryn should be afforded the same equal opportunity as any other student. In pertinent part, the trial court ruled as follows: "The Court finds that she can participate in all sports at the school so long as she is eligible to participate in all sports. She has no rights above anyone else in this process, but is to be treated like anyone else when trying out." The trial court went on to state that the Board should not interfere with her participation in extracurricular activities "unless there is a warranted reason to do so." Although perhaps not directly stated as such, we interpret these rulings as reiterating Kathryn's constitutional right to equal protection of the law. Again, the trial court did not definitively order the Board to do one thing or the other with regard to Kathryn's participation in athletics. The trial court merely declared that, should the Board interfere with her desire to participate in the future, it must have a warranted reason. Given the trial court's determination that Kathryn was a resident of Wilson County and therefore eligible to attend Wilson Central High School, we

find no error in this declaration. Although she is undoubtedly subject to eligibility restrictions that pertain to participation, Kathryn is entitled to try-out for athletic teams at her school on the same basis as any other student. The trial court's order simply declares that any interference with such pursuits must be supported by a "warranted reason." As we perceive it, the trial court's direction to the Board is consistent with what the constitutional principle of equal protection of the laws demands. That is, there must be a "rational" basis for a difference in treatment. *See King–Bradwell P'ship v. Johnson Controls, Inc.*, 865 S.W.2d 18, 21 (Tenn.Ct. App.1993) (stating that governmental action "not affecting a suspect class or infringing upon a fundamental right is upheld if it is rationally related" towards a legitimate societal interest); *see also Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (recognizing "class of one" equal protection claims where party is intentionally treated differently from others similarly situated and there is no rational basis for the difference). We can discern no basis for concluding that the trial court was without jurisdiction to declare that the Board should honor Kathryn's equal protection rights moving forward. Accordingly, we conclude that the Board's first two issues are without merit.

*Propriety of the Trial Court's "Temporary Injunctive Order"*

■ The next issue presented for our review is the Board's assertion that the trial court erred in issuing a "Temporary Injunctive Order" on August 1, 2014. In particular, the Board contends that the issuance of that order violated Rule 65.03 of the Tennessee Rules of Civil Procedure.

---

**5.** At one point in the trial court's order, the trial judge commented as follows: "If in fact she's eligible, and she has [a right] because of her eligibility to participate, then I think to interfere with that would be a denial of her due process rights."

Under that rule, a trial court may issue a temporary restraining order "without written or oral notice to the adverse party or its attorney" if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party can be heard in opposition; and
>
> (B) the applicant's attorney (or pro se applicant) certifies in writing efforts made to give notice and the reasons why it should not be required.

Tenn. R. Civ. P. 65.03(1). Although there is no dispute among the parties that the trial court entered an *ex parte* restraining order on August 1, 2014, we observe that the referenced order is not in the record transmitted to us on appeal. More significantly, we fail to see what redress is available to the Board concerning the issuance of the "Temporary Injunctive Order." The trial court's subsequent November 24, 2014 order, which was entered after a full hearing, granted permanent injunctive relief to the Beans, thereby rendering any interlocutory restrictions on the Board's conduct moot. Accordingly, we will not entertain the Board's assertions of error on this issue.[6] *See Great Beginnings Child Care, Inc. v. Office of Governor of State of Idaho*, 128 Idaho 158, 911 P.2d 751, 753 (1996) (noting that "[a]n expired TRO in a case that the trial court ultimately decided on the merits presents a moot issue"); *Mitchell v. Hayden, Stone, Inc.*, 225 Ga. 711, 171 S.E.2d 280, 282 (1969) ("[A]ll questions sought to be raised on this appeal with respect to the legality of such ex parte restraining order were ren-dered moot, since such temporary restraining order is no longer in force and effect, and a reversal of the judgment rendering such ex parte restraining order and a reversal of the judgment of the court refusing to hear the defendant's motion for modification of such ex parte restraining order would avail the appellant nothing.").

*Trial Court's Residency Determination*

■ The Board's next issue on appeal asserts that the trial court's residency determination was against the weight of the evidence. Although the trial court's November 24, 2014 final order concluded that the Beans were residents of Wilson County, the Board argues that the trial court "disregarded items of evidence that, taken in totality, clearly show the true residence of the Beans was in Davidson County." Although there is no dispute that the Beans spent a significant amount of time at the Davidson County property, we fail to find error in the trial court's residency determination.

As already noted, we review a trial court's findings of fact "de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R.App. P. 13(d). "[F]or the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect." *Realty Shop, Inc. v. RR Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn.Ct.App.1999). When employing this standard of review, we are "bound to leave a trial court's findings of fact undisturbed unless the court determines that the aggregate weight of the evidence demonstrates that

---

**6.** Although issues pertaining to the issuance of the "Temporary Injunctive Order" are moot, we do not intend to diminish the importance of ensuring that the requirements of Rule 65.03 are met. We would caution trial courts that temporary restraining orders should only issue without notice provided that the requirements outlined by Rule 65.03 are specifically met.

a finding of fact other than the one found by the trial court is more probably true." *Id.* (citation omitted). "When credibility and weight to be given testimony are involved, considerable deference must be afforded to the trial court when the trial judge had the opportunity to observe the witnesses' demeanor and to hear in-court testimony." *Hughes v. Metro. Gov't of Nashville and Davidson Cnty.*, 340 S.W.3d 352, 360 (Tenn.2011) (citation omitted). "Because trial courts are able to observe the witnesses, assess their demeanor, and evaluate other indicators of credibility, an assessment of credibility will not be overturned on appeal absent clear and convincing evidence to the contrary." *Id.* (citation omitted).

In this case, the evidence preponderates in favor of the trial court's residency determination. Although the Beans undoubtedly spent a lot of time at the Davidson County property, Kathryn's parents testified that the Davidson County property was where Mr. Bean's business office was located. Moreover, although certain evidence showed that the water usage was higher at the Davidson County property than at the Faulkner Lane property in Wilson County, the Beans' testimony indicated that this was attributable to the fact that the family primarily showered and washed their clothes at the Davidson County property. As Mr. Bean testified, a problem with a drain at the Faulkner Lane property made washing clothes there difficult. The trial court credited the Beans' testimony, and they consistently affirmed that the Faulkner Lane property was their household residence. Whereas the proof showed that Kathryn's parents owned the Faulkner Lane property, they did not own the Davidson County property. In keeping with their representations of residency, the Beans' testimony revealed that they generally slept each night at the Faulkner Lane property in Wilson County. More-

over, it is also worth noting that the family's housecats usually stayed at the Faulkner Lane residence. Although the Board suggests that the Beans' presence in Wilson County is a mere subterfuge to allow Kathryn to participate in athletics at Wilson Central High School, the aggregate weight of the evidence does not preponderate against the conclusion reached by the trial court. As such, we must affirm the trial court's finding that the Beans are residents of Wilson County.

*Propriety of Disallowing Testimony Regarding Utility Bills*

■ The Board's final issue on appeal asserts that the trial court erred by refusing to allow Mr. Whitlock to testify about the electric and water usage evidenced by the Beans' utility bills. In its brief, the Board contends that Mr. Whitlock's testimony on these topics should have been allowable under Rule 701 of the Tennessee Rules of Evidence. Under that rule, a lay witness's "testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." Tenn. R. Evid. 701. Inasmuch as the Board asserts error on the exclusion of evidence, we are reminded of what this Court has stated previously:

An erroneous exclusion of evidence requires reversal only if the evidence would have affected the outcome of the trial had it been admitted. *Pankow v. Mitchell*, 737 S.W.2d 293, 298 (Tenn.Ct. App.1987). Reviewing courts cannot make this determination without knowing what the excluded evidence would have been. *Stacker v. Louisville & N. R.R. Co.*, 106 Tenn. 450, 452, 61 S.W. 766 (1901); *Davis v. Hall*, 920 S.W.2d 213, 218 (Tenn.Ct.App.1995); *State v. Pendergrass*, 795 S.W.2d 150, 156 (Tenn.

Crim.App.1989). Accordingly, the party challenging the exclusion of evidence must make an offer of proof to enable the reviewing court to determine whether the trial court's exclusion of proffered evidence was reversible error. Tenn. R. Evid. 103(a)(2); *State v. Goad*, 707 S.W.2d 846, 853 (Tenn.1986); *Harwell v. Walton*, 820 S.W.2d 116, 118 (Tenn.Ct. App.1991). Appellate courts will not consider issues relating to the exclusion of evidence when this tender of proof has not been made. *Dickey v. McCord*, 63 S.W.3d 714, 723 (Tenn.Ct.App.2001); *Rutherford v. Rutherford*, 971 S.W.2d 955, 956 (Tenn.Ct.App.1997); *Shepherd v. Perkins Builders*, 968 S.W.2d 832, 833–34 (Tenn.Ct.App.1997).

*Thompson v. City of LaVergne*, M2003–02924–COA–R3–CV, 2005 WL 3076887, at *9 (Tenn.Ct.App. Nov. 16, 2005). Upon our review of the transcript of the November 4, 2014 trial proceedings in this case, we observe that the Board did not make an offer of proof as to what the substance of Mr. Whitlock's testimony would have actually been. Without knowing the substance of the excluded evidence, we are unable to assume that the evidence would have been admissible and that it would have affected the outcome of the trial. *See Hampton v. Braddy*, 270 S.W.3d 61, 66 (Tenn.Ct.App.2007). As such, the issue is waived.

## Conclusion

For the foregoing reasons, we affirm the decision of the trial court. Costs of this appeal are assessed against the Appellant, the Wilson County Board of Education, for which execution may issue if necessary. This case is remanded to the trial court for enforcement of the judgment, the collection of costs, and for such further proceedings as may be necessary and are consistent with this Opinion.